761 So.2d 1055 (2000)
John D. FREEMAN, Appellant,
v.
STATE of Florida, Appellee.
John D. Freeman, Petitioner,
v.
Harry K. Singletary, etc., Respondent.
Nos. SC79651, SC89199.
Supreme Court of Florida.
June 8, 2000.
*1058 Terri L. Backhus of Backhus & Izakowitz, P.A., Tampa, Florida, for Appellant/Petitoner.
Robert A. Butterworth, Attorney General, and Barbara J. Yates, Assistant Attorney General, Tallahassee, Florida, for Appellee/Respondent.
PER CURIAM.
John D. Freeman, a death row inmate, appeals an order entered by the trial court denying his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850, and he petitions this Court for a writ of habeas corpus. We have jurisdiction. See Art. V, § 3(b)(1),(9), Fla. Const. The cases have been consolidated. For the reasons stated below, we remand for an evidentiary hearing on Freeman's claims that defense counsel was ineffective during the penalty phase of this capital proceeding. In all other respects we affirm the trial court's denial of 3.850 relief, and we deny habeas relief.

STATEMENT OF THE CASE AND FACTS[1]
John D. Freeman (Freeman) was convicted of first-degree felony murder for the 1986 killing of Leonard Collier (Collier). Freeman was sentenced to death, and both the conviction and sentence were affirmed on appeal. See Freeman v. State, 563 So.2d 73 (Fla.1990). Collier caught Freeman in the act of burglarizing his home. Freeman claimed that Collier pointed a gun at him and threatened to shoot him to prevent his escape. The two struggled over the gun and fell outside into the front yard. When Freeman obtained possession of the gun, he used the gun to repeatedly strike Collier in the head ten to twelve times. Collier died from the head wounds.
During the guilt phase of the trial, defense counsel made several objections to *1059 the prosecutor's closing argument. First, defense counsel objected arguing the prosecutor was trying to get the jury to use this case to send a message to the community when he argued the Legislature had enacted the felony murder law to prevent violent felonies. The judge overruled the objection. Second, defense counsel objected after the prosecutor made several comments that defense counsel had the "gall" and the "nerve" to argue self-defense. This objection was also overruled. Third, defense counsel objected when the prosecutor argued defense counsel's request for a manslaughter conviction was an insult to the jurors' intelligence. The judge sustained this objection and told the jurors he would instruct them on the law at the conclusion of closing arguments, but denied the motion for a mistrial.
The judge agreed to give the jury a special verdict form that included a place under first-degree murder where the jury could check premeditated murder or felony murder. Second and third-degree murder did not have places to check whether they were felony murder. The jury was confused by the instructions and asked the judge to clarify them. The judge referred the jury to the page of the instructions that would answer its question, but the jury was still confused. They sent out the same question again. The judge called the jury in and explained that there was no legal reason for distinguishing between first-degree premeditated murder and first-degree felony murder. He further explained the difference between first-degree felony murder and third-degree felony murder would depend on whether the underlying felony was burglary or assault. After the jury had been excused, defense counsel objected because the judge failed to reread all the other possible offenses when he reinstructed the jury. In response, the judge recalled the jurors and reinstructed that he was not trying to influence them in any way and that they should reread all of the instructions, including the other possible offenses. The judge then excused the jury and asked defense counsel if that was satisfactory. Defense counsel responded, "Yes sir. Thank you." The jury convicted Freeman of first-degree felony murder.
Prior to the penalty phase of the trial, defense counsel requested a continuance because he had been unable to locate Mr. Sorrells, Freeman's best friend, who would testify to certain nonstatutory mitigation. This testimony would have included Freeman's abusive childhood, his dedication to his work as a carpenter, and his love for children. The judge denied the request for a continuance because defense counsel could not offer sufficient proof that a continuance would produce the witness and because the witness had previously given similar testimony under oath in the penalty phase of a separate first-degree murder trial, the Epps trial. The judge allowed Mr. Sorrells' former testimony to be read to the jury.
During the penalty phase, the prosecutor argued four statutory aggravating factors: (1) Freeman had previously been convicted of the crimes of first-degree murder, armed robbery, and burglary of a dwelling with an assault; (2) the murder occurred while Freeman was committing a burglary of a dwelling; (3) the murder was committed for pecuniary gain; and (4) the murder was heinous, atrocious, and cruel. The State presented Ms. Epps, the wife of the other murder victim, to testify about Freeman's previous murder conviction. As preliminary background the prosecutor asked Ms. Epps her occupation and if she had any children. After Ms. Epps responded that she did have children, defense counsel objected and moved for a mistrial. He argued that the prosecutor had put Ms. Epps on the stand to conjure sympathy for the victims and that it was improper for the prosecutor to inform the jury that Mr. Epps had surviving children. The judge sustained the objection and instructed the jury to disregard the remarks, but he denied the motion for a mistrial. Ms. Epps testified that Freeman *1060 had previously been convicted for stabbing her husband six times when he came home during a similar burglary. In his final remarks to the jury, the prosecutor argued that Freeman claimed to love children, but he could not help the Epps children.
Defense counsel did not present any statutory mitigation and very limited non-statutory mitigation. Freeman's mother and brother testified that he was abused by his stepfather, possessed artistic ability, and particularly enjoyed playing with children. A clinical psychologist testified that Freeman had a below average I.Q. and a fourth grade achievement level. Although Sorrells did not testify in person at the penalty phase of this case, Sorrells' testimony from the penalty phase in the Epps trial was read to the jury. Sorrells' prior testimony was similar to the mitigation evidence presented by Freeman's mother and brother.
The jury, after only fifteen minutes of deliberations, recommended death by a nine-to-three vote. Thereafter, the judge imposed the death sentence. In his sentencing order, the judge found three aggravating circumstances: (1) Freeman had previously been convicted of the crimes of first-degree murder, armed robbery, and burglary of a dwelling with an assault, all of which had been committed just three weeks before Collier's murder; (2) Collier's murder occurred while Freeman was committing a burglary of a dwelling; and (3) Collier's murder was committed for pecuniary gain. The judge found the second and third aggravating factors merged into one. Although the judge did not find any statutory mitigation, he did find non-statutory mitigation including the fact that Freeman: (1) was of low intelligence; (2) had been abused by his stepfather; (3) possessed some artistic ability; and (4) enjoyed playing with children. After weighing these factors, the judge sentenced Freeman to death.
On appeal, appellate counsel argued: (1) the prosecutor erred in presenting Ms. Epps' testimony at the penalty phase, and the trial judge erred in denying the motion for a mistrial based on Ms. Epps' testimony; (2) the prosecutor made several improper comments during the penalty phase that required reversal; (3) the jury instructions on heinous, atrocious, and cruel were unconstitutionally vague; (4) the death penalty was proportionally unwarranted in this case; and (5) Freeman's sentence in this case must be vacated if the Epps conviction is reversed on direct appeal. This Court held: (1) it was improper to allow Ms. Epps to testify, but even without her testimony the jury would still have recommended death; (2) the prosecutor's statements were not reversible error; (3) the heinous, atrocious, and cruel instruction was not properly preserved for appeal; and even if it had been properly preserved, the instruction sufficiently limited the jury's discretion so that it was not unconstitutionally vague; (4) the death sentence was not disproportionate; and (5) the argument to vacate if the Epps conviction was reversed was moot because the conviction was affirmed in Freeman v. State, 547 So.2d 125 (Fla.1989).
Freeman now appeals the trial court's summary denial of his motion for postconviction relief and files a petition for a writ of habeas corpus. In the postconviction appeal, Freeman raises eleven issues.[2] In *1061 the petition for writ of habeas corpus, Freeman also raises eleven issues.[3]

POSTCONVICTION RELIEF APPEAL

Brady Claim and Ineffective Counsel
Freeman claims error in the trial court's summary denial of relief based on his allegations that critical exculpatory evidence was never presented to the jury because of actions by the State. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He further contends that to the extent that these claims are not cognizable under Brady, they demonstrate ineffective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under either theory, Freeman claims he is entitled to an evidentiary hearing, and the trial court erred in failing to have such a hearing. We disagree and affirm the summary disposition.
We begin our analysis with the general proposition that a defendant is entitled to an evidentiary hearing on a postconviction relief motion unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient. See, e.g., Maharaj v. State, 684 So.2d 726 (Fla.1996); Anderson v. State, 627 So.2d 1170 (Fla. 1993); Hoffman v. State, 571 So.2d 449 (Fla.1990); Holland v. State, 503 So.2d 1250 (Fla.1987); Lemon v. State, 498 So.2d 923 (Fla.1986); Fla. R.Crim. P. 3.850. The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden. See Kennedy v. State, 547 So.2d 912 (Fla.1989). However, in cases where there has been no evidentiary hearing, we must accept the factual allegations made by the defendant to the extent that they are not refuted by the record. See Peede v. State, 748 So.2d 253 (Fla.1999); Valle v. State, 705 So.2d 1331 (Fla.1997). We must examine each claim to determine if it is legally sufficient, and, if so, determine whether or not the claim is refuted by the record.
Where a Brady violation has been alleged, the defendant must establish a prima facie case that "there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). To meet this test, the defendant must prove: (1) the State possessed favorable evidence, including impeachment evidence; (2) the evidence was suppressed; (3) the defendant did not possess the favorable evidence and could not have obtained the *1062 evidence with the exercise of due diligence; and (4) there is a reasonable probability that, had the evidence been disclosed, the outcome would have been different. See Buenoano v. State, 708 So.2d 941 (Fla. 1998); Haliburton v. Singletary, 691 So.2d 466 (Fla.1997); Cherry v. State, 659 So.2d 1069 (Fla.1995); Hegwood v. State, 575 So.2d 170 (Fla.1991). However, "[t]here is no Brady violation where the information is equally accessible to the defense and the prosecution, or where the defense either had the information or could have obtained it through the exercise of reasonable diligence." Provenzano v. State, 616 So.2d 428, 430 (Fla.1993). Accord Roberts v. State, 568 So.2d 1255 (Fla.1990); James v. State, 453 So.2d 786 (Fla.1984).
When a defendant alleges ineffective assistance of counsel, he must establish the two prongs necessary to demonstrate ineffectiveness as outlined by the Supreme Court in Strickland. The Court said:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. 2052. In reviewing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052.
First, Freeman argues the court erred in summarily denying his claim that the State violated Brady by withholding exculpatory information or, alternatively, that defense counsel had the information and was ineffective for failing to present it to the jury during the guilt phase of the trial. Specifically, Freeman alleges error with regard to the following: (1) the State's failure to inform defense counsel of Kathy Freeman's statement or, in the alternative, defense counsel's failure to have Kathy Freeman testify; (2) the State's failure to conduct a proper investigation of the crime scene or, in the alternative, defense counsel's failure to properly address this issue when cross-examining the detectives who investigated the crime scene; and (3) the State's failure to produce police reports and photographs which would corroborate Freeman's claim that Collier died from hitting his head on the porch or, in the alternative, defense counsel's failure to present this evidence to the jury.
Freeman alleges the State improperly withheld Kathy Freeman's statement that Freeman told her he did not intend to kill Collier. The record in this case establishes that Freeman knew or should have known about the statement through the exercise of reasonable diligence. The State listed Kathy Freeman in its initial and second discovery responses in the Epps case.[4] The second response contained the notation, "defendant told [Kathy Freeman] that a man named McMillion (first name starts with a D) killed the victim and sold the property. Defendant also admitted committing the other murder [Collier], but said he didn't do this one [Epps]." Freeman listed Kathy Freeman in his reciprocal discovery. Thus, the record conclusively demonstrates Freeman was aware of Kathy Freeman's potential as a witness and that she had made known to the State statements attributable to the defendant. Defense counsel could have *1063 discovered the details of any statement through reasonable diligence (for example, by deposition or another discovery method). There was no Brady violation.[5]
Additionally, defense counsel was not ineffective for failing to have Kathy Freeman testify. In order to demonstrate that defense counsel was ineffective, Freeman must establish a prima facie case that defense counsel's performance was deficient and that the deficient performance affected the outcome of the trial. See Strickland, 466 U.S. at 668, 104 S.Ct. 2052. Here, Freeman was convicted of felony murder. Intent for the murder is inferred from the underlying felony. As a matter of law, a statement that Freeman did not intend to kill Collier was legally insufficient to negate a felony murder conviction. See State v. Gray, 654 So.2d 552, 553 (Fla. 1995); State v. Enmund, 476 So.2d 165, 168-69 (Fla.1985)(Shaw, J., specially concurring, explaining the felony murder rule). The jury chose not to convict Freeman of premeditated first-degree murder even though they were instructed that they could choose premeditated first-degree murder, first-degree felony murder or both. Therefore, we find beyond a reasonable doubt that defense counsel's failure to have Kathy Freeman testify did not affect the outcome of the case and counsel was not ineffective for failing to have her testify.
Freeman also argues the State committed a Brady violation by failing to properly investigate the crime scene,[6] or, in the alternative, defense counsel was ineffective for failing to argue this to the jury. The court was correct in summarily denying this claim because it is not truly a Brady claim. Complaints about the State's treatment of the physical evidence should have been raised on direct appeal; therefore, they are procedurally barred in collateral proceedings. See Hardwick v. Dugger, 648 So.2d 100 (Fla.1994); Lambrix v. Singletary, 641 So.2d 847 (Fla. 1994); Bryan v. Dugger, 641 So.2d 61 (Fla. 1994). Moreover, defense counsel did argue this point to the jury. The issue was addressed in defense counsel's opening argument, cross-examination of Detective DeWitt, and closing argument. Thus, the record also conclusively rebuts Freeman's allegation that defense counsel was ineffective.
Freeman must make a prima facie showing that defense counsel's performance fell measurably below that of competent counsel. See Knight v. State, 394 So.2d 997, 1001 (Fla.1981). In the instant case, Freeman cannot prove defense counsel's performance affected the outcome of his trial. He alleges a more thorough investigation would have added evidentiary support to his self-defense claim, proving he did not intend to kill Collier. He opines that defense counsel was ineffective for failing to inform the jury of the improper crime scene investigation. As previously stated, intent is inferred from the underlying felony in felony murder cases. Therefore, additional evidence that Freeman did not intend to kill Collier would not have affected the outcome of this trial as a matter of law. See Strickland, 466 U.S. at 668, 104 S.Ct. 2052.
Freeman further alleges the State improperly withheld exculpatory evidence relating to a photograph of the crime scene, a handwritten diagram of the crime scene, and a police report.[7] Freeman argues *1064 Collier died from hitting his head on the front porch step. He claims the prosecution withheld evidence of a picture showing blood on the step. There was no Brady violation pertaining to the photograph because it was given to the defense. See Provenzano, 616 So.2d at 430. In his opening statement, defense counsel referred to the photograph, arguing Collier died from hitting his head on the step. Counsel said, "On one of the stoops, and you will see the photographs. Look at the blood in that area." There is no Brady violation when the evidence complained of is in the possession of the defense.
In the alternative, Freeman alleges defense counsel was ineffective because he did not present the picture to the jury or use it to impeach Detective DeWitt.[8] Again, Freeman's claim of ineffective counsel is insufficient, as a matter of law, because he cannot demonstrate that the failure to present this evidence affected the outcome of his trial. Had the jury seen the picture and believed Collier died from hitting his head on the step, it would have only lent some credibility to Freeman's claim that he acted in self-defense. However, self-defense is not legally available "to a person who `[i]s attempting to commit, committing, or escaping from the commission of a forcible felony.'" Young v. State, 739 So.2d 553, 560 (Fla.1999) (quoting Marshall v. State, 604 So.2d 799, 803 (Fla.1992)). Freeman was in the process of escaping from the commission of a burglary in the victim's home.
Although Freeman has subdivided this Brady/ineffective assistance of counsel issue into separate parts concerning the Kathy Freeman statement, the crime scene investigation, the photograph, the diagram and the police report, all of these subissues coalesce into one real argumentthat these pieces of evidence were material to Freeman's claim of self-defense. While items such as these may be material to a claim of self-defense in a premeditated murder case, this Court has made it clear that such evidence is not material in a felony murder conviction. See Young, 739 So.2d at 560. Freeman's jury rejected the opportunity to convict him of premeditated murder and convicted him of first-degree felony murder only. There is no doubt that the evidence subsumed under this issue is not material to Freeman's felony murder conviction; there is no reasonable probability that the outcome would have been different had the evidence been disclosed. The claim was therefore properly summarily denied.

Ineffective Assistance of Counsel in the Penalty Phase
Freeman claims defense counsel was ineffective in the penalty phase of the proceedings for failing to investigate and present to the jury crucial mitigating evidence from neighbors and friends, for failing to present the live testimony of Sorrells, for failing to have mental heath experts review Freeman's family history and present this evidence along with evidence of alcohol and drug abuse, and for failing to challenge the prior violent felony, the Epps murder. A defendant is entitled to an evidentiary hearing on an ineffective assistance of counsel claim unless the claim is legally insufficient or the record conclusively refutes the factual allegations. See, e.g., Maharaj, 684 So.2d at 728; Anderson, 627 So.2d at 1171; Holland, 503 So.2d at 1251; Lemon, 498 So.2d at 923. On this claim we find *1065 Freeman was entitled to an evidentiary hearing because the allegations were sufficiently pled and the record does not conclusively refute the allegations.
Specifically, Freeman alleges defense counsel was ineffective for failing to provide his only expert witness with his background, his school records, and the insight of numerous family members and nonfamily persons into his childhood. Freeman claims his expert was critically impeached because he did not have substantial background information. Freeman also alleges defense counsel was incompetent because he failed to investigate and present his abusive childhood through the testimony of his neighbors. He alleges this information would not be cumulative mitigation because it could have provided details about specific events not presented by Freeman's family or through Sorrells' former testimony.[9] The court dismissed this claim stating that more is not necessarily better and finding defense counsel cannot be ineffective for failing to present cumulative mitigation. The record does not conclusively demonstrate that the mitigation evidence defense counsel failed to present was cumulative. See Rose v. State, 675 So.2d 567 (Fla.1996)(holding defense counsel has a duty to conduct a reasonable investigation for possible mitigating evidence). Therefore, an evidentiary hearing should have been held to determine if defense counsel was ineffective for failing to investigate and present this evidence.
Freeman further alleges he is entitled to an evidentiary hearing on his claim that defense counsel was ineffective for failing to subpoena Sorrells for the penalty phase. In trying to convince the trial court that a continuance was needed in order to secure the attendance of Sorrells, defense counsel stated it was crucial to the defense that Sorrells testify in person. It was acknowledged that defense counsel had failed to subpoena Sorrells prior to the commencement of the trial. Although the trial court allowed Sorrells' testimony from the Epps case to be read to the jury, we cannot say that the live testimony, especially in conjunction with the other mitigating evidence that the defense now alleges will be produced at an evidentiary hearing, would not make a more substantial impact on the jury. This is the type of issue that the trial court must consider in the context of all the evidence presented at the hearing.
Freeman further complains defense counsel was ineffective in failing to produce a qualified expert witness to testify to his drug and alcohol problems. Despite the fact that Freeman had a substantial history of drug and alcohol abuse and admitted to smoking marijuana on the morning Collier was killed, the only expert defense counsel presented during the penalty phase was a clinical psychologist who was not qualified to give an opinion on the effects of drug and alcohol abuse. The court also dismissed this claim, stating that more mitigation was not necessarily better. With Freeman's substantial history of drug and alcohol abuse, defense counsel may have been ineffective for failing to present an expert witness who was qualified to give an opinion on this issue. There is a reasonable doubt as to the effect such a witness might have had on the jury's recommendation. Therefore, the court should have held an evidentiary hearing. See, e.g., Maharaj, 684 So.2d at 728; Anderson, 627 So.2d at 1171; Hoffman, *1066 571 So.2d at 450; Holland, 503 So.2d at 1251; Lemon, 498 So.2d at 923.
Freeman also argues defense counsel was ineffective for failing to argue the weaknesses in the Epps conviction. At trial, defense counsel solicited information from a witness on cross-examination that the Epps case was being appealed. One claim in the Epps appeal was that Daryl McMillion committed the murder. The prosecutor objected to defense counsel debating the validity of the Epps conviction unless he could explore the strong evidence of guilt in that case. The judge excused the jury and asked each side to proffer their questions to the witness. After defense counsel and the State had proffered their questions, the following discussion took place:
THE COURT: I can see what we are doing here.
MR. STETSON:[10] We are retrying the [Epps] case.
MR. MCGUINNESS:[11] All right, your Honor. I will cease my cross.
THE COURT: You will?
MR. STETSON: I don't blame you.
The defense counsel obviously gave second thought to this attempt to relitigate the circumstances of the Epps conviction. Postconviction counsel has failed to demonstrate that this was error.
Ineffective assistance of counsel under Strickland requires a showing that counsel made an error that was so serious that he was not functioning as counsel as guaranteed by the Sixth Amendment. In the instant case, the failure of counsel to pursue a tactic of relitigating the Epps case was not error. There has been no showing that Freeman had a right to present this type of evidence. Counsel cannot be ineffective under these circumstances; thus, the trial court did not err in failing to have an evidentiary hearing on this issue.

Instructions on Aggravating Circumstances
Next, Freeman argues the jury received inadequate instructions on the aggravating circumstances of murder in the course of a felony, pecuniary gain, and heinous, atrocious, and cruel. There is no allegation of ineffective assistance of counsel on this claim. The issue of the heinous, atrocious and cruel instruction is not properly raised in a postconviction motion because the claim either was or could have been raised on direct appeal. See Hardwick, 648 So.2d at 103; Lambrix, 641 So.2d at 848; Bryan, 641 So.2d at 63. The murder in the course of a felony and pecuniary gain instructions were not objected to at trial, and the heinous, atrocious and cruel aggravator was objected to at trial on other grounds. This Court addressed the failure to object further to the heinous, atrocious and cruel aggravator on direct appeal. See Freeman v. State, 563 So.2d at 76.[12] Accordingly, the court was correct in summarily denying this claim. See Remeta v. Dugger, 622 So.2d 452 (Fla. 1993).

Automatic Aggravating Circumstances
Freeman next contends defense counsel was ineffective for failing to argue that the application of certain aggravating factors, specifically the "during the commission of an enumerated felony" and "for pecuniary gain" aggravators, were improper because he was convicted of felony murder, where the underlying felony was the same felony *1067 that created the statutory aggravators. Defense counsel challenged the application of automatic aggravators in a pretrial motion, but he did not object at the time the instructions were actually given. Freeman has not established a prima facie case that defense counsel's failure to object to the aggravators, after having the pretrial motion denied, was incompetent performance.
Moreover, this Court has held there is no merit to the argument that an underlying felony cannot be used as an aggravating factor. See Blanco v. State, 702 So.2d 1250 (Fla.1997). Therefore, Freeman cannot demonstrate that the outcome of his trial was affected by defense counsel's failure to object to these aggravating factors. See Strickland, 466 U.S. at 668, 104 S.Ct. 2052. This claim was properly summarily denied.

Prosecutorial Argument
Freeman next contends the prosecutor made improper and inflammatory remarks during his closing argument in the penalty phase and that defense counsel was ineffective for failing to argue the impropriety of these remarks. This issue was raised on direct appeal and cannot be relitigated under the guise of ineffective assistance of counsel. See Hardwick, 648 So.2d 100; Lambrix, 641 So.2d 847; Bryan, 641 So.2d 61. Freeman makes a conclusory statement that defense counsel was ineffective for failing to object to many improprieties during the prosecutor's closing arguments. See Kennedy, 547 So.2d at 912. In fact, defense counsel continually objected during the prosecutor's closing arguments. Defense counsel also moved for a mistrial at the conclusion of the prosecutor's closing argument based upon the numerous objections. Freeman is merely alleging ineffective assistance as a vehicle to have a second appeal on the merits. This claim was properly summarily denied.

The Epps Murder Conviction
Freeman claims that his prior conviction for murdering Mr. Epps was unconstitutionally obtained because the trial court did not know that the prior conviction rested on Daryl McMillion's perjured testimony. There is no allegation of ineffective assistance of counsel on this claim. This claim was raised on direct appeal; therefore, it is procedurally barred and was properly summarily denied. See Hardwick, 648 So.2d 100; Lambrix, 641 So.2d 847; Bryan, 641 So.2d 61.

Improper Burden Shifting
Freeman argues the penalty phase jury instructions on aggravating and mitigating circumstances improperly shifted the burden to him to prove that a sentence of life was appropriate. He further contends defense counsel was ineffective for failing to argue this issue. The court found the merits of the claim to be procedurally barred and the allegation of ineffective assistance insufficient to overcome the procedural bar. See Kennedy, 547 So.2d at 913. This Court has repeatedly held there is no merit to the burden shifting claim. See, e.g., Demps v. Dugger, 714 So.2d 365 (Fla.1998); Shellito v. State, 701 So.2d 837 (Fla.1997). Therefore, even if the claim were not procedurally barred, Freeman would not be able to prove that he was prejudiced by defense counsel's failure to object to the instructions. This claim was properly summarily denied.

Exculpatory Evidence in the Epps Case
Freeman claims that the State withheld exculpatory information related to the Epps case. See Brady, 373 U.S. at 83, 83 S.Ct. 1194. Alternatively, he argues that defense counsel was ineffective for failing to argue the unreliability of the Epps conviction. In summarily denying this claim, the trial court found that it was procedurally barred because the time to challenge the Epps murder on postconviction has expired. We agree and find that this claim was properly summarily denied. Freeman's bare assertion that counsel was ineffective for failing to raise this issue *1068 does not suffice to overcome the procedural default.[13]

Racial Motivation for Death Penalty
Next, Freeman alleges defense counsel was ineffective for failing to argue the State's pursuit of the death penalty in the Epps and Collier cases was based upon improper racial considerations. He claims the prosecutor rejected Freeman's offer to plead guilty in both cases if the death penalty were dropped because the State needed to "get the numbers up" on cases seeking the death penalty where white defendants had killed black victims. There is no evidence in the record to refute this allegation; therefore, it must be taken as true and the merits should be addressed in an evidentiary hearing. See, e.g., Maharaj, 684 So.2d at 728; Anderson, 627 So.2d at 1171; Hoffman, 571 So.2d at 450 Holland, 503 So.2d at 1253; Lemon, 498 So.2d at 923.
The State argues this claim is legally insufficient because the decision to seek the death penalty is within the ambit of the prosecutor's discretion. See State v. Bloom, 497 So.2d 2, 3 (Fla.1986). However, in Bloom, this Court stated:
While recognizing a court's latitude and discretion during post-trial disposition, Jogan reiterated the state has absolute discretion at pre-trial. In considering similar circumstances, federal courts have held:
[T]he decision of whether or not to prosecute in any given instance must be left to the discretion of the prosecutor. This discretion has been curbed by the judiciary only in those instances where impermissible motives may be attributed to the prosecution, such as bad faith, race, religion, or a desire to prevent the exercise of the defendant's constitutional rights.

United States v. Smith, 523 F.2d 771, 782 (5th Cir.1975), cert. denied, 429 U.S. 817, 97 S.Ct. 59, 50 L.Ed.2d 76 (1976) (citations omitted). We apply these principles and hold that article II, section 3, of the Florida Constitution prohibits the judiciary from interfering with this kind of discretionary executive function of a prosecutor.
Id. (emphasis added). Thus, this Court has stated that prosecutorial discretion will not be interfered with unless there are improper motives. Likewise, in McCleskey v. Kemp, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), the Supreme Court held that studies showing disproportionate impact of death sentences on black defendants as compared to white defendants were not sufficient to find the state's administration of the death penalty violated a black defendant's right to equal protection. However, the Court went on to say, "[T]o prevail under the Equal Protection Clause, McCleskey must prove that the decision-makers in his case acted with discriminatory purpose." Id. at 292, 107 S.Ct. 1756. The claim being made here is distinguishable from cases which have alleged a discriminatory impact proves there was a discriminatory purpose. In this case there is an allegation that the prosecutor made a statement that his motives in pursuing the death penalty were based upon race. Since this claim is legally sufficient and not conclusively rebutted by the record, an evidentiary hearing should have been held to determine if the State pursued the death penalty for an improper racial motive and if the State acted with a discriminatory purpose. We note that this case is a rare exception limited to its facts.

Cumulative Error
Freeman additionally argues the cumulative effect of the errors made during his trial deprived him of his constitutional right to a fair trial. The trial court summarily denied this claim as improperly pled, stating "no particular allegations or *1069 citations to the record, nor any indication of the true nature of the claim" had been alleged. A postconviction movant must specifically identify the claims which demonstrate the prevention of a fair trial. Mere conclusory allegations do not warrant relief. See Valle v. State, 705 So.2d 1331 (Fla.1997); Jackson v. Dugger, 633 So.2d 1051 (Fla.1993); Phillips v. State, 608 So.2d 778 (Fla.1992); Roberts v. State, 568 So.2d 1255 (Fla.1990); Smith v. Dugger, 565 So.2d 1293 (Fla.1990); Kennedy v. State, 547 So.2d 912 (Fla.1989). Accordingly, this claim was insufficiently pled and properly summarily denied. See Rivera v. State, 717 So.2d 477 (Fla.1998).

Record Attachments
As his final 3.850 issue, Freeman argues that the trial court erred in failing to attach portions of the record to its order summarily denying his motion for postconviction relief. He claims the order should be reversed with instructions that the court hold an evidentiary hearing. In Anderson v. State, 627 So.2d 1170, 1171 (Fla.1993), this Court held summary denial without a hearing is proper where the court: (1) states its rationale in the decision; or (2) attaches specific parts of the record to the order that refute each claim. Here, the trial court stated the reasons for summary denial of each claim in the order. See Diaz v. Dugger, 719 So.2d 865 (Fla. 1998); Demps v. Dugger, 714 So.2d 365 (Fla.1998); Mills v. State, 684 So.2d 801 (Fla.1996). Thus, this claim is without merit.

WRIT OF HABEAS CORPUS
The issue of appellate counsel's effectiveness is appropriately raised in a petition for writ of habeas corpus. However, ineffective assistance of appellate counsel may not be used as a disguise to raise issues which should have been raised on direct appeal or in a postconviction motion. In evaluating an ineffectiveness claim, the court must determine
whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986). See also Haliburton, 691 So.2d at 470; Hardwick, 648 So.2d at 104. The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based. See Knight v. State, 394 So.2d 997 (Fla.1981). "In the case of appellate counsel, this means the deficiency must concern an issue which is error affecting the outcome, not simply harmless error." Id. at 1001. In addition, ineffective assistance of counsel cannot be argued where the issue was not preserved for appeal or where the appellate attorney chose not to argue the issue as a matter of strategy. See Medina v. Dugger, 586 So.2d 317 (Fla.1991); Atkins v. Dugger, 541 So.2d 1165, 1167 (Fla.1989) ("Most successful appellate counsel agree that from a tactical standpoint it is more advantageous to raise only the strongest points on appeal and that the assertion of every conceivable argument often has the effect of diluting the impact of the stronger points.").
First, Freeman argues appellate counsel was ineffective in failing to raise the issue of the prosecutor's improper arguments made during the guilt phase of the trial and for failing to raise as an issue the trial court's error in denying the motion for mistrial based upon the improper comments. Specifically, Freeman argues the prosecutor made statements that the jury should use this case to send a message to the community and interjected his own opinion by stating defense counsel had the "gall" and the "nerve" to argue self-defense. Freeman argues the underlying merits of this issue without citing any *1070 cases to demonstrate that appellate counsel's failure to raise the arguments fell measurably below the standard of competent counsel. These issues are a thinly veiled attempt to have an appeal on the merits, which is clearly not the purpose of a habeas petition.
Furthermore, even if appellate counsel had raised these issues on direct appeal, they would have been found to be without merit. Appellate counsel cannot be ineffective for failing to raise an issue which is without merit. See Hardwick, 648 So.2d at 106; Atkins, 541 So.2d at 1167. Freeman argues the prosecutor told the jury to use this case to send a message to the community. In fact, defense counsel objected before such statement was made. The trial judge overruled the objection, stating there was no problem with the prosecutor postulating on why we have the felony murder law. See Hamilton v. State, 703 So.2d 1038 (Fla.1997); Cole v. State, 701 So.2d 845 (Fla.1997). Then, the judge reminded the jury that arguments were not the law and he would instruct them on the law after closing arguments. When the prosecutor resumed his argument, he did not tell the jury to use the case to send a message to the community. Thus, the improper comment Freeman now complains about was never actually made. Moreover, any prejudice created by the prosecutor's remarks prior to the objection was cured when the judge instructed the jury that the prosecutor's arguments were not the law.
Freeman also argues the prosecutor's repeated reference to defense counsel's "gall" and "nerve" in claiming self-defense was an improper statement of the prosecutor's opinion and that appellate counsel was ineffective for failing to raise this argument on direct appeal. The cases Freeman cites to support this argument are distinguishable in the severity of the comments.[14] The prosecutor in this instance was pointing out the fact that it appears incredible that one who has illegally entered the home of another to rob the occupant of his valuables would seek to justify that invasion and the subsequent death of the occupant by claiming self-defense. Accordingly, Freeman has failed to meet his burden of proof that appellate counsel was ineffective. See Provenzano v. Dugger, 561 So.2d 541 (Fla.1990) (holding appellate counsel need not raise every conceivable claim on appeal to be effective).
Freeman also contends appellate counsel was ineffective for failing to argue that the trial court erred in restricting the reinstruction of the jury. Appellate counsel cannot have been ineffective for failing to raise this issue because it was not preserved for appeal. See Medina, 586 So.2d at 318. At trial, defense counsel objected to the judge's attempt to answer the jury's question concerning the difference between first-degree felony murder and third-degree felony murder. Defense counsel argued that the judge emphasized first-degree felony murder and third-degree felony murder to the exclusion of the other possible offenses. The judge recalled the jury and instructed it that he in no way meant to imply that the jury should only consider first-degree felony murder and third-degree felony murder and that the jury should read all the other possible offenses. The judge instructed the jury as to the page numbers for each of the other offenses. After the jury was excused, the judge asked defense counsel, "Was that satisfactory?" Defense counsel responded, "Yes, sir. Thank you." Therefore, the issue was not properly preserved for appeal. Appellate counsel cannot be ineffective for failing to raise an issue that *1071 has not been preserved for appeal. See Hardwick, 648 So.2d 100; Medina, 586 So.2d 317.
Next, Freeman contends appellate counsel was ineffective for failing to argue that the trial court erred in denying the pretrial motion to dismiss the indictment because it did not specifically charge felony murder and erred in denying motions requesting special jury instructions. Appellate counsel cannot be ineffective for failing to raise these issues because the claims are without merit. First, Freeman argues the indictment should have been dropped because it only charged him with premeditated murder, not felony murder. This argument was rejected by this Court in Gudinas v. State, 693 So.2d 953, 964 (Fla.1997) ("We have repeatedly rejected claims that it is error for a trial court to allow the State to pursue a felony murder theory when the indictment gave no notice of the theory."). Second, Freeman argues the trial judge erred in denying his special jury instructions. The judge heard defense counsel's arguments in favor of the requested instructions but decided to give the standard jury instructions instead. The standard jury instructions are presumed to be correct. See Elledge v. State, 706 So.2d 1340 (Fla.1997). Freeman has not shown that the instructions given were incorrect. Thus, appellate counsel was not ineffective for failing to raise these issues on appeal because they are without merit.
Freeman claims appellate counsel rendered ineffective assistance by not raising on appeal the denial of several pretrial motions related to the constitutionality of the death penalty generally and as applied in this case. There is no merit to the underlying motions. See, e.g., Elledge, 706 So.2d at 1343; Pooler v. State, 704 So.2d 1375 (Fla.1997); Hunter v. State, 660 So.2d 244 (Fla.1995). Therefore, appellate counsel was not ineffective for failing to raise the issues on appeal.
Freeman further claims appellate counsel was ineffective for failing to argue the trial court erred in refusing to grant a continuance of the penalty phase so that defense counsel could locate Sorrells. The denial of a motion for continuance is within the trial court's discretion. See Scott v. State, 717 So.2d 908 (Fla.1998); Turner v. Dugger, 614 So.2d 1075 (Fla. 1992). Defense counsel failed to subpoena Sorrells prior to the penalty phase. This claim has been raised as ineffective assistance of trial counsel in the 3.850 motion. Appellate counsel does not have to raise every possible motion on direct appeal to be effective. See Atkins, 541 So.2d at 1167.
Next, Freeman claims appellate counsel was ineffective for failing to argue that the instructions given to the jury on the murder in the course of a felony, pecuniary gain, and heinous, atrocious and cruel aggravators were inadequate. Appellate counsel cannot be ineffective for failing to raise issues not properly preserved for appeal. See Groover v. Singletary, 656 So.2d 424 (Fla.1995). Freeman did not object to the felony murder and pecuniary gain instructions at trial. Therefore, appellate counsel was not ineffective for failing to raise these issues on direct appeal.
Appellate counsel challenged the heinous, atrocious, and cruel aggravator instruction on direct appeal. See Freeman, 563 So.2d at 76. Thus, this issue is procedurally barred. See Francis v. Barton, 581 So.2d 583 (Fla.1991); Porter v. Dugger, 559 So.2d 201 (Fla.1990). Appellate counsel cannot be ineffective for failing to convince the Court to rule in appellant's favor. See Swafford v. Dugger, 569 So.2d 1264, 1266 (Fla.1990) ("After appellate counsel raises an issue, failing to convince this Court to rule in an appellant's favor is not ineffective performance.").
Next, Freeman claims appellate counsel was ineffective for failing to argue that applying the aggravator of murder in the course of a felony to him, when he was convicted of felony murder based upon the same underlying felony, constitutes an improper automatic aggravator. This Court *1072 has repeatedly held that there is no merit to this claim. See Blanco v. State, 706 So.2d 7 (Fla.1997); Banks v. State, 700 So.2d 363 (Fla.1997); Johnson v. State, 660 So.2d 637 (Fla.1995). Therefore, appellate counsel was not ineffective for failing to raise this claim because it is without merit. See Kokal v. Dugger, 718 So.2d 138 (Fla. 1998); Groover v. Singletary, 656 So.2d 424 (Fla.1995); Swafford, 569 So.2d at 1264; King v. Dugger, 555 So.2d 355 (Fla. 1990).
Freeman also claims the prosecutor deprived him of due process by presenting inflammatory evidence and by making improper comments and arguments during the penalty phase of the trial. The first two aspects of this argument were argued on direct appeal. See Freeman, 563 So.2d at 75-76.[15] Appellate counsel cannot be ineffective for failing to convince the Court. See Swafford, 569 So.2d at 1266. Freeman's only argument not raised on direct appeal is that the prosecutor's argument denigrated Freeman's mitigation. Trial counsel did not object to the prosecutor's penalty phase argument on this ground. Therefore, it was not preserved for appeal. Appellate counsel is not ineffective for not raising an unpreserved issue. See Medina, 586 So.2d at 317.
Freeman argues the penalty phase instructions improperly shifted the burden to him to prove that a life sentence would be appropriate. Freeman does not argue appellate counsel was ineffective for failing to raise this issue. The propriety of jury instructions is a direct appeal issue, and will not be considered on its merits in a habeas petition. See Pope, 496 So.2d at 798. Furthermore, even if Freeman had alleged ineffective assistance of appellate counsel, the issue would be without merit because it was not preserved for appeal, and the burden shifting argument has consistently been held to be without merit. See Johnson v. State, 660 So.2d 637 (Fla. 1995). Appellate counsel cannot be ineffective for failing to raise an unpreserved error or an issue that is without merit. See Swafford, 569 So.2d 1264; Medina, 586 So.2d 317.
Next, Freeman argues his death sentence was improperly based on the Epps murder aggravator because the Court vacated the death sentence in the Epps case. See Freeman, 547 So.2d at 129. This issue should be raised on direct appeal or in a motion for postconviction relief, rather than in a habeas petition. See White v. Dugger, 511 So.2d 554 (Fla.1987). In fact, Freeman raised this issue in the motion for postconviction relief. There is no allegation that appellate counsel was ineffective.
Finally, Freeman argues that appellate counsel rendered ineffective assistance by not ensuring that the entire record below was included in the record on appeal. In June 1988, Freeman filed a petition for writ of prohibition in this Court, Freeman v. Moran, No. 72,561 (Fla. July 6, 1988), attempting to prohibit the trial court from trying him for Collier's murder. The basis of the petition was an allegation that a twenty-person grand jury indicted him rather than an eighteen-person grand jury. The petition was denied. In the order denying Freeman's motion for rehearing, the Court stated "the parties are advised that the denial of the Suggestion for Writ of Prohibition was a decision on the merits." Freeman now argues the record from that proceeding should have been included with the direct appeal record because it was a decision on the merits. He claims the failure to include this portion of the record deprived him of effective *1073 assistance of appellate counsel. Even if the Court were to assume that failure to include this portion of the record fell measurably below the standard of competent counsel, Freeman has not demonstrated that the failure prejudiced him. Accordingly, this claim is without merit. See Pope, 496 So.2d at 800. Freeman has failed to plead a prima facie case of ineffective assistance of counsel. Therefore, Freeman's petition for a writ of habeas corpus is hereby denied.
We hereby affirm the trial court's denial of 3.850 relief except the claim of ineffective assistance of counsel in the penalty phase which we remand for an evidentiary hearing. We also deny the petition for writ of habeas corpus.
It is so ordered.
SHAW, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion, in which HARDING, C.J., concurs.
WELLS, J., concurring in part and dissenting in part.
I concur in the majority's decision to the extent that it affirms the trial court's denial of appellant's motion for postconviction relief. However, I dissent to that part of the majority decision in which the majority reverses the trial court's denial and remands for an evidentiary hearing in respect to penalty-phase mitigation issues.
I dissent because I do not find that the allegations of appellant's amended motion meet either prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), so as to require an evidentiary hearing on ineffective assistance of counsel in the penalty phase.
First, in reviewing the trial court's decision, it is essential to give full cognizance to the fact that, before the trial for the Collier murder, appellant had been convicted of another first-degree murder, burglary with assault, and robbery with a deadly weapon. These convictions arose out of a very similar criminal episode on October 20, 1986, less than a month before the November 11, 1986, Collier murder. The mitigation testimony before the jury in the previous murder case was substantially similar to that presented to the jury in the Collier murder case. The jury in the first murder trial recommended life imprisonment. However, in the Collier murder case, the difference was the additional aggravator of the previous murder, burglary with assault, and robbery with a deadly weapon. Logic dictates that the difference in the jury recommendation for life in the first case and death in the second case was the heavy aggravation of this being appellant's second murder conviction in a substantially similar situation and was not the result of counsel's ineffectiveness in respect to the presentation of mitigation. Furthermore, the fact that counsel relied upon mitigation which had succeeded in the first case clearly is an indication that counsel was not ineffective in violation of the minimal standards of Strickland. Counsel was functioning as counsel in that it could reasonably be concluded that he should not vary a winning strategy. To conclude otherwise engages in the second-guessing precluded by Strickland.
Second, I conclude the trial judge was correct in respect to his analysis of both of the allegations upon which the majority relies in requiring an evidentiary hearing. In respect to the testimony of Mr. Sorrells, I find that the real issue is whether the trial court should have granted a continuance of the penalty phase so that Sorrells could be subpoenaed. This issue is only addressed as ineffective assistance of counsel because the issue of a continuance is not properly a postconviction issue but rather an issue which had to be raised on direct appeal. Even if properly reached through postconviction, appellant's allegations demonstrate no prejudice. Appellant asserts no testimony which would have been presented by Sorrells at the Collier *1074 trial that was not presented through the reading of the transcript of Sorrells' testimony at the first murder trial. A new penalty phase should not be ordered because a witness does not appear live if the witness's testimony is not demonstrated to be materially different in substance. New trials should not result because of the difference between live testimony and transcript. This cannot be Strickland-type prejudice. In this instance, there was an advantage to appellant in presenting the testimony in the way that it was presented, in that it did not open the witness to further cross-examination as to whether his opinion of appellant was the same knowing appellant had been convicted of two similar murders.
In respect to the additional mitigation which appellant alleges, what is being alleged in most part is cumulative. In fact, it is cumulative to what was effective obtaining a life sentence in the first murder case. A reading of the penalty-phase testimony shows that, through the testimony of appellant's mother, brother, and the psychologist, the evidence of appellant's very bad childhood was presented to the jury. I cannot conclude that laying out more of appellant's background, including his drug use, would have sufficiently influenced a jury in his favor so that the jury's recommendation would probably have been different in view of the fact that this was appellant's second murder conviction for a murder-burglary under similar circumstances. I find the Eleventh Circuit's decision in Glock v. Moore, 195 F.3d 625, 636 (11th Cir.1999), to be instructive:
It is true that we have sometimes found that trial counsel's failure to present evidence of a defendant's personal history or good character is enough to demonstrate prejudice to the defendant at the penalty phase. See Dobbs v. Turpin, 142 F.3d 1383, 1390 (11th Cir.1998); Jackson v. Herring, 42 F.3d 1350, 1368-69 (11th Cir.1995); Harris v. Dugger, 874 F.2d 756, 763-64 (11th Cir.1989); Blake v. Kemp, 758 F.2d 523, 534 (11th Cir.1985). But in those cases, we found prejudice because of counsel's almost complete failure to present any mitigating evidence of significance. See Dobbs, 142 F.3d at 1390 (no evidence of an unfortunate upbringing presented to the court); Jackson, 42 F.3d at 1363 ("Neither lawyer offered any evidence regarding Jackson's personal history or background. Counsel were virtually silent during two subsequent sentencing hearings before the trial judge...."); Harris, 874 F.2d at 763 (trial counsel had a "total-and admitted-ignorance about the type of mitigation evidence available to them"); Blake, 758 F.2d at 533 (counsel "made no preparations whatsoever for the penalty phase" of defendant's trial). Those cases are a far cry from the instant case, where much of the new evidence that Glock presents is merely repetitive and cumulative to that which was presented at trial.
Finally, I again make the point that under the postconviction procedure which was in effect at the time this trial court ruled upon this motion, it was the trial court's responsibility to decide whether there was a need for an evidentiary hearing. Under this procedure, not every alleged deficiency of counsel in the penalty phase requires an evidentiary hearing. This trial judge followed that procedure and should not be reversed.
HARDING, C.J., concurs.
NOTES
[1] A more detailed statement of the facts can be found in Freeman v. State, 563 So.2d 73 (Fla.1990).
[2] In his motion for postconviction relief, Freeman argues his motion was improperly summarily denied for the following reasons: (1) the jury was not presented with critical exculpatory evidence during the guilt phase; (2) defense counsel was ineffective during the penalty phase; (3) his sentencing jury did not receive proper instructions to guide and channel its discretion; (4) he was sentenced to death in reliance upon improper automatic aggravating factors; (5) the prosecutor made inflammatory and improper comments, which rendered the death sentence fundamentally unfair and unreliable; (6) his death sentence was based upon an unconstitutionally obtained prior conviction; (7) the penalty phase jury instructions shifted the burden to him to prove that life was the appropriate punishment; (8) he received ineffective assistance of counsel during the guilt phase of the Epps trial, and the State failed to disclose critical exculpatory evidence related to the Epps murder; (9) the State's decision to seek the death penalty in his cases was based upon racial considerations; (10) cumulative error made his conviction and death sentence unconstitutional; and (11) portions of the record were not attached, making the order unconstitutional.
[3] In his habeas writ petition, Freeman argues ineffective assistance of appellate counsel and constitutional error with regard to the following: (1) failing to raise the issue that the trial court erred in denying his motion for a mistrial; (2) failing to raise the argument that the trial court reversibly erred when reinstructing the jury during the guilt phase; (3) failing to argue numerous pretrial motions raised by defense counsel during the guilt phase; (4) failing to raise many of the numerous pretrial motions, objections and requests for mistrials raised by defense counsel during the penalty phase; (5) failing to argue the trial court erred in refusing to grant a continuance prior to the penalty phase; (6) failing to argue that he was denied the right to a reliable capital sentence because the jury was not properly instructed; (7) he was sentenced to death in reliance upon automatic aggravating factors which failed to guide and channel the sentencer's discretion; (8) the prosecutor's inflammatory and improper comments and arguments rendered his death sentence fundamentally unfair and unreliable; (9) the penalty phase jury instructions shifted the burden to him to prove that a life sentence was appropriate; (10) his death sentence was based upon an unconstitutionally obtained prior conviction; and (11) failing to assure that the record on appeal was complete.
[4] Freeman had the same defense counsel in the Epps case and the Collier case.
[5] Additionally, there is no Brady violation because there is no reasonable probability that the outcome would have been different based on the fact that Freeman was convicted of felony murder and intent to kill or lack of intent to kill would not change this crime.
[6] Freeman also argues as Brady material that the medical examiner's testimony was flawed and that the defense now has an expert who can point out these flaws. This type of evidence does not meet the definition of Brady; there is no allegation that the State had the information that is now being offered by this defense expert.
[7] Freeman argues both a police report by Detective DeWitt and a handwritten diagram from the State Attorney's Office demonstrate there was blood adjacent to or on the front step, and they were corroborative of his defense that Collier hit his head during the struggle. While it is clear that police reports are subject to disclosure pursuant to Florida Rule of Criminal Procedure 3.220 and that this evidence meets the first three prongs under Brady, the failure to disclose under the circumstances of this case is not prejudicial and would not result in a different outcome since there was testimony from several State witnesses concerning blood at the scene. Moreover, this evidence would have been relevant in the same manner as the photograph, which was available to the defense.
[8] Detective DeWitt testified that there was no blood on the step but stated there was a large circle of blood in the yard.
[9] For example, Freeman alleges he suffered a severe head injury as a child when he was run over by a car. This allegation should be taken as true for purposes of granting an evidentiary hearing, unless it is conclusively rebutted by the record. See, e.g.,; Maharaj, 684 So.2d at 728; Anderson, 627 So.2d at 1171; Hoffman, 571 So.2d at 450; Holland, 503 So.2d at 1251; Lemon, 498 So.2d at 923. It is unclear whether defense counsel knew about this incident and chose not to present it as a matter of strategy or if defense counsel failed to discover the evidence because he did not conduct a thorough background investigation on Freeman.
[10] Mr. Stetson was the prosecutor.
[11] Mr. McGuinness was counsel for Freeman.
[12] The instructions given on murder in the course of a felony and pecuniary gain were standard jury instructions. Claims concerning the impropriety of these instructions have been repeatedly held to be without merit. See, e.g. Blanco v. State, 702 So.2d 1250 (Fla. 1997). Therefore, defense counsel's objection to them would have been overruled. Thus, even if Freeman had alleged ineffective assistance of counsel, the claim would have been insufficient because there was no reasonable possibility that the outcome of the trial was affected by defense counsel's failure to object to the standard instructions.
[13] This argument was made in the Epps case on direct appeal and rejected. See Freeman v. State, 547 So.2d 125 (Fla.1989).
[14] See Gore v. State, 719 So.2d 1197 (Fla.1998)(prosecutor violated a pretrial agreement limiting the scope of collateral crime evidence by soliciting facts in a collateral crime that were extremely prejudicial); Riley v. State, 560 So.2d 279 (Fla. 3d DCA 1990)(prosecutor called defendant a "liar" and continually stated his opinion that the defendant was guilty of first-degree murder).
[15] First, Freeman argues it was improper for Ms. Epps to testify. This argument was presented on direct appeal. The Court held Ms. Epps should not have been called to testify about her husband's murder but found beyond a reasonable doubt that the testimony did not affect the jury's recommendation. Second, Freeman argues the prosecutor made several improper arguments during closing argument. The Court held these statements were not reversible error. See Freeman, 563 So.2d at 73.