# Supreme Court of Florida

_____

No. SC13-2331
_____

**CORNELIUS O. BAKER,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC14-873
_____

**CORNELIUS O. BAKER,**
Petitioner,

vs.

**JULIE L. JONES, etc.,**
Respondent.

[March 23, 2017]

PER CURIAM.

Cornelius Baker, a prisoner under sentence of death, appeals an order of the

circuit court denying his motion for postconviction relief under Florida Rule of

Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus.  We

have jurisdiction.  See art. V, § 3(b)(1), (9), Fla. Const.  For the reasons stated below, we reverse the trial court's denial of postconviction relief as to Baker's claim relating to the constitutionality of his penalty phase, vacate Baker's death sentence, and remand for a new penalty phase.  We deny, however, Baker's petition for a writ of habeas corpus.

## FACTUAL AND PROCEDURAL BACKGROUND

Baker was convicted by a jury and sentenced to death for the January 2007 robbery, kidnapping, and murder of Elizabeth Uptagrafft.  This Court summarized the case in greater detail on direct appeal.  The relevant facts here are as follows:

> At the time of the offenses, Baker was living in Daytona Beach, Florida, with his girlfriend, Patricia Roosa.  Baker had recently been released from jail, where he had been incarcerated for several months for selling drugs.  Baker and Roosa decided that they wanted to move to New York.  To get extra money for their move, they decided to rob a house using a pistol that Baker had recently stolen.  On the morning of January 7, 2007, they walked around a Daytona Beach neighborhood until they found a house they could rob.  Baker later told police that he and Roosa selected the Uptagrafft residence because it looked nice and they thought there might be money inside.  Baker and Roosa walked to the front door.  Baker told Roosa to ring the doorbell and that he would do the rest.
>
> Inside the house, Elizabeth Uptagrafft and her mother, Charlene Burns, had just finished eating breakfast.  The only occupants of the house at the time were Elizabeth, Burns, and Elizabeth's adult son Joel Uptagrafft.  Burns later stated that she thought they finished eating at approximately 8:30 or 9:00 a.m., and that Joel was still asleep at that time.  After breakfast, Burns went to her bedroom to take a nap, while Elizabeth sat down on the couch in the living room to read.  The doorbell rang a few moments later.  When Elizabeth

opened it, Baker came through the door and immediately hit her with his gun. The gun discharged and the bullet grazed Elizabeth's head.

At trial, Burns testified that she heard a noise that sounded like someone kicking in the door, followed by a gunshot. Burns stated that after she entered the hallway outside her room that was connected to the living room, she was attacked by Baker, who beat, choked and kicked her. Burns said that Baker then told her to sit on the couch next to Elizabeth. When Burns saw Elizabeth's head wound, she yelled for her grandson, Joel. Joel came out of his room and was attacked by Baker, who beat Joel with the gun.

Burns estimated that the family was held at gunpoint for between two-and-a-half and three hours while Baker and Roosa searched the house for valuables. Burns stated that there was no money in the house, but said that Baker and Roosa found some jewelry and placed it in a bag. Elizabeth eventually offered Baker her ATM card and PIN code if they would leave. Baker did not believe that the PIN was real and told Elizabeth that she would have to come with them. According to Burns, Baker then said that if Elizabeth did not come with him, he would kill all three members of the family. Because Elizabeth was covered in blood from her head wound, Baker told her that she would have to change clothes before they left. Baker also told her to find a hat to cover the wound. Baker collected Elizabeth's cell phone and all other phones in the house. Before she left the house, Elizabeth whispered to her mother to call the police once Baker and Roosa were gone. Baker then placed Elizabeth, the phones, and the stolen jewelry into Elizabeth's car, and he and Roosa drove away from the house. Joel then walked to a neighbor's house and called the police.

. . . .

. . . Baker decided to drive to a rural area of Flagler County known as the Mondex. Baker told police that it was his intention to drop Elizabeth off in a remote area where it would take her some time to find a phone that she could use to call the police. When they arrived at a spot that Baker thought was sufficiently isolated, Baker told Elizabeth to get out of the car, which she did. He also told her that she was going to live. According to Baker's statement to police,

he then drove approximately fifteen feet before stopping the car and getting out. Baker said that Roosa told him, "Don't do it. Don't do it." Baker told the officers, "I felt like I done came this far." Baker said that Elizabeth started to run and that he ran after her. She ran into some nearby bushes, then tripped and fell. Baker fired two shots at her. He then went back to the car and drove away.

Baker v. State, 71 So. 3d 802, 808-09 (Fla. 2011). Baker was indicted on charges of first-degree murder, home invasion robbery with a firearm, kidnapping, conspiracy, burglary of a structure or conveyance, and aggravated fleeing and eluding a law enforcement officer. Id. at 811. The jury found Baker guilty of one count each of first-degree murder, home invasion robbery, kidnapping, and aggravated fleeing and eluding a law enforcement officer. Id.

At the penalty phase, Baker's attorney, Matthew Phillips, presented testimony from psychologist Dr. Harry Krop, Baker's mother and two sisters, and Baker himself. At the conclusion of the penalty phase, the jury returned a recommendation in favor of death by a vote of nine to three. Id. at 812. The trial court sentenced Baker to death, making the following findings as to the aggravating and mitigating circumstances:

> [T]he court found that the following aggravating factors had been proven beyond a reasonable doubt: (1) the crime was committed while the defendant was engaged in the commission of, or an attempt to commit, the crime of home invasion robbery or kidnapping; (2) the capital felony was committed for pecuniary gain (great weight); (3) the capital felony was especially heinous, atrocious, or cruel (great weight); and (4) the capital felony was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification (great weight).

- 4 -

As statutory mitigation, the court found: (1) the crime was committed while the defendant was under the influence of extreme mental or emotional disturbance (some weight); and (2) the age of the defendant (twenty years old) at the time of the crime (some weight). As nonstatutory mitigation, the court found: (1) the defendant suffers from brain damage, low intellectual functioning, drug abuse and that those factors are compounded by each other (some weight); (2) the defendant was born into an abusive household and was neglected as a child (some weight); (3) the defendant is remorseful (little weight); (4) the defendant was well behaved and displayed appropriate demeanor during all court proceedings (little weight); and (5) the defendant's confession and cooperation with police (some weight).

Id. at 813 (footnotes omitted). In addition to its death sentence, the trial court sentenced Baker to life imprisonment for the charge of home invasion with a firearm, life imprisonment for the charge of kidnapping, and fifteen years' imprisonment for the charge of aggravated fleeing and eluding a law enforcement officer. Id.

On direct appeal, Baker raised seven claims.[1] This Court affirmed Baker's convictions and sentences. Id. at 825. The United States Supreme Court denied

---

1. Baker asserted that: (1) the trial court erred in denying his motion to suppress the recording of his post-arrest interrogation; (2) the trial court erred in refusing to allow Baker to read a letter of apology during the penalty phase; (3) the trial court erred in admitting portions of two victim impact statements; (4) the trial court erred in finding that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP); (5) the trial court erred in finding that the murder was especially heinous, atrocious, or cruel (HAC); (6) death is a disproportionate punishment; and (7) Florida's death penalty scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584 (2002). Baker, 71 So. 3d 802 at 814-24.

certiorari.  Baker v. Florida, 565 U.S. 1237 (2012).  Baker filed an initial

postconviction motion pursuant to Florida Rule of Criminal Procedure 3.851,

raising six claims.[2]  On September 16, 2013, the trial court conducted an

evidentiary hearing on Baker's ineffective assistance claim.  At the evidentiary

hearing, Baker called trial counsel to testify regarding his twenty years of

experience as a public defender, his recollection of Baker's examination during the

penalty phase, and Baker's letter of remorse.  Phillips was the only witness called

to testify at the hearing.  On October 14, 2013, the trial court denied all relief.

Baker has appealed the denial of his postconviction motion to this Court.  He

has also filed a petition for a writ of habeas corpus with this Court.

## RULE 3.851 MOTION ON APPEAL

Baker has raised the following six issues in this appeal: (1) trial counsel

rendered ineffective assistance of counsel during the penalty phase of the trial by

---

2.  Baker asserted that: (1) trial counsel rendered ineffective assistance of counsel for failing to proffer Baker's letter of apology; (2) the Rule Regulating the Florida Bar 4-3.5(d)(4), which prohibits party attorneys from interviewing jurors after the conclusion of the case, violated Baker's right to equal protection; (3) the trial court's instructions to the jury during the penalty phase diminished the jury's sense of responsibility in determining the proper sentence and trial counsel was ineffective for failing to litigate this issue; (4) Florida's sentencing statute is unconstitutional based on Apprendi v. New Jersey, 530 U.S. 466 (2000) and Ring, 536 U.S. 584; (5) Florida's capital sentencing statutes and rules unconstitutionally fail to prevent the arbitrary and capricious imposition of the death penalty and Florida's use of lethal injection constitutes cruel and unusual punishment; and (6) cumulative error.

failing to proffer Baker's letter of apology; (2) the trial court erred in denying Baker's claim that Florida's rule prohibiting defense counsel from interviewing jurors is unconstitutional under the federal and state constitutions; (3) section 921.141 is facially vague and overbroad, the trial court's instruction to the jury that its role was advisory was unconstitutional, and trial counsel provided ineffective assistance for failing to litigate these claims; (4) Florida's death sentence statute is unconstitutional as applied; (5) Florida's capital sentencing statute does not prevent the arbitrary and capricious imposition of the death penalty, Florida's method of execution is cruel and unusual under the Eighth Amendment, and trial counsel was ineffective for failing to litigate these claims; and (6) cumulative error.

### Penalty Phase Issues

First, Baker claims that because the capital sentencing scheme utilizes aggravating factors to operate as the functional equivalent of an element of a greater offense, they must be found by a unanimous jury under Ring, 536 U.S. 584. During the pendency of Baker's case, the United States Supreme Court found Florida's death penalty scheme unconstitutional in Hurst v. Florida, 136 S. Ct. 616 (2016). We have interpreted Hurst v. Florida, an extension of Ring, to require a jury to unanimously find each aggravating factor, that the aggravating factors are sufficient to warrant death, and that the aggravating factors outweigh the mitigation. See Hurst v. State, 202 So. 3d 40, 57, 66 (Fla. 2016). We have also

determined that most defendants sentenced to death after the Ring decision should receive the benefit of Hurst. See Mosley v. State, 41 Fla. L. Weekly S629, S624 (Fla. Dec. 22, 2016). Baker, whose sentence was final in 2011, is one such defendant.

Because Hurst applies to Baker, we must consider whether it is clear beyond a reasonable doubt that a rational jury would have unanimously found all the facts necessary for imposition of death and unanimously recommended death, such that any Hurst error is harmless. See Mosley, 41 Fla. L. Weekly at S641. In this case, the jury's recommendations of death were not unanimous, and the jury made no findings concerning the aggravating and mitigating circumstances. The jury recommended death for the murder of Elizabeth Uptagrafft by a vote of nine to three. Therefore, we cannot conclude that the error in Baker's penalty phase was harmless beyond a reasonable doubt. Accordingly, Baker is entitled to a new penalty phase.[3]

## PETITION FOR WRIT OF HABEAS CORPUS

Baker raises two claims in his petition for habeas corpus filed with this Court. He contends that (1) appellate counsel rendered ineffective assistance by failing to supplement the record on appeal; and (2) appellate counsel rendered

---

3. Because we find that Baker is entitled to a new penalty phase, we do not address the other penalty phase issues raised.

- 8 -

ineffective assistance by failing to supplement the record on appeal with the full April 24, 2002 ACT Corporation Evaluation Report. As explained below, Baker is not entitled to habeas relief on either claim.

## Record on Appeal

For his first habeas corpus claim, Baker argues appellate counsel was ineffective for failing to supplement the record on appeal. Claims of ineffective assistance of appellate counsel are appropriately presented in a petition for writ of habeas corpus. See Freeman v. State, 761 So. 2d 1055, 1069 (Fla. 2000). Consistent with the standard set forth by Strickland v. Washington, 466 U.S. 668 (1984), to grant habeas relief based on ineffective assistance of counsel this Court must determine:

> first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.

Pope v. Wainwright, 496 So. 2d 798, 800 (Fla. 1986); see Freeman, 761 So. 2d at 1069; Thompson v. State, 759 So. 2d 650, 660 (Fla. 2000). In raising such a claim, "[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So. 2d at 1069; see Knight v. State, 394 So. 2d 997, 1001 (Fla. 1981). Claims of ineffective assistance of appellate counsel may not be used to camouflage issues

that should have been presented on direct appeal or in a postconviction motion. Rutherford v. Moore, 774 So. 2d 637, 643 (Fla. 2000). "If a legal issue 'would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective." Id. (quoting Williamson v. Dugger, 651 So. 2d 84, 86 (Fla. 1994)).

Baker claims that appellate counsel was ineffective for failing to supplement the record on appeal with an exhibit that contained the medical records that defense psychologist, Dr. Harry Krop, relied on during his testimony during Baker's penalty phase.[4] Baker takes issue with the trial court's finding that he was not under the influence of extreme mental or emotional disturbance when the crime was committed. As part of the court's reasoning, it stated that Dr. Krop believed

---

4. Both parties agree that an exhibit was admitted into evidence, omitted from the record on appeal, and contained the following documents:

Psychological Evaluation by J. Jeff Oatley, Ph.D., dated April 6, 1994; ACT Corporation Psychiatric Evaluation by Sharon Winters, M.D., dated April 22, 1994; Psychological Evaluation by James D. Upson, Ph.D., dated June 24, 1994; ACT Corporation Psychiatric Evaluation by Ann Mian, M.D., dated April 30, 1998; Psychological Report by Peter Larkin, M.A., N.C.S.P., dated April 14, 2000; two reports of Harry Krop, Ph.D., dated July 6, 2007 and September 7, 2007; PET scan dated February 8, 2008, and an MRI dated September 10, 2007; composite records from Shands Hospital from Baker's 1992 eye surgery; composite of Flagler County school health records from Baker; composite of Flagler County school system assessment reports for Baker; and composite of Flagler County school "other" reports for Baker.

- 10 -

that Baker "suffers from significant brain damage," yet noted "no other of the numerous reports even suggested the possibility of brain damage." Baker argues that this Court was unable to review the trial court's determination of Baker's sentence adequately without these records, which further prevented this Court from performing a competent proportionality review. The State argues that the absence of the exhibit from the record on appeal did not undermine confidence in the result reached in Baker's direct appeal in light of the extensive testimony of defense witnesses that established all of the relevant facts and findings contained within the exhibit.

During the penalty phase, defense counsel presented the testimony of Dr. Krop. Dr. Krop's testimony provided this Court with extensive detail about Baker's difficult childhood as well as all of the medical, psychological, and educational issues that were documented in the exhibit. Dr. Krop explained in detail the dynamics of Baker's difficult childhood as well as his medical and developmental challenges. Dr. Krop also described the findings contained in the psychological evaluation conducted by J. Jeff Oatley, Ph.D., on April 6, 1994, and the ACT Corporation Psychiatric Evaluation conducted by Sharon Winters, M.D., on April 22, 1994.

Dr. Krop then summarized and explained the relevant portions of the psychological evaluation by James D. Upson, Ph.D., dated June 24, 1994, and the

ACT Corporation Psychiatric Evaluation by Ann Mian, M.D., dated April 30, 1998.  Dr. Krop's testimony then addressed the psychological report by Peter Larkin, M.A., N.C.S.P., dated April 14, 2000.  Next, Dr. Krop summarized the findings contained in his two reports dated July 6, 2007, and September 7, 2007.  After explaining the fundamentals of MRI and PET scans, Dr. Krop then explained the results of Baker's PET scan dated February 8, 2008, and Baker's MRI dated September 10, 2007.  Finally, Dr. Krop's testimony on direct examination concluded with his overall opinion and diagnoses regarding Baker's mental state.

Dr. Krop's testimony regarding the medical records established that Baker had an inability to concentrate, borderline intelligence, and learning disabilities.  Baker also exhibited poor behavior in school, was not learning, and had a serious impairment of social and school functioning.  Regarding his own opinion and diagnoses, Dr. Krop testified that Baker had attention deficit disorder and a cognitive disorder due to a frontal lobe brain impairment.  None of the other medical records or evaluations found that Baker suffered from brain damage.

The State's cross-examination of Dr. Krop was brief.  The State questioned Dr. Krop about his experience serving primarily as an expert witness for the defense.  The State then challenged Dr. Krop's opinion that Baker suffered from brain damage, but receded from the line of questioning once Dr. Krop explained that he based his opinion on his own neuropsychological testing and the findings of

Baker's PET scan. The State challenged Dr. Krop's findings of brain damage and borderline intelligence but left the bulk of Dr. Krop's testimony unrefuted. Dr. Krop's conclusions and testimony concerning the contents of the documents within the Exhibit were unimpeached and did not need documentary support or augmentation.

This Court has routinely affirmed death sentences despite there being an incomplete record on appeal. Darling v. State, 808 So. 2d 145, 163 (Fla. 2002) ("Darling has failed to demonstrate what specific prejudice, if any, has been incurred because of the missing transcripts. The missing portion of the transcript has not been shown to be necessary for a complete review of this appeal."); Armstrong v. State, 862 So. 2d 705, 721 (Fla. 2003) ("Armstrong has failed to link a meritorious appellate issue to the allegedly missing record and thus cannot establish that he was prejudiced by its absence."). Baker fails to show how he was prejudiced by the omissions in the record, or how consideration of new information contained within the exhibit would change the result of Baker's direct appeal or otherwise undermine confidence therein. The trial court's finding that only Dr. Krop believed Baker suffered from brain damage was correct. Contrary to Baker's claim, neither the PET scan nor any other defense exhibit submitted into evidence tendered the conclusion that Baker suffered from brain damage.

Furthermore, counsel is not ineffective for failing to present duplicative or cumulative evidence of a single mitigating factor. See Darling v. State, 966 So. 2d 366, 378 (Fla. 2007) (citing Gudinas v. State, 816 So. 2d 1095, 1106 (Fla. 2002)); see also Sweet v. State, 810 So. 2d 854, 863-64 (Fla. 2002). Dr. Krop's extensive testimony[5] regarding Baker's medical reports established all of the relevant facts and findings contained within the exhibit. Dr. Krop's testimony concerning the relevant facts and findings contained in the exhibit was a part of the record on appeal and the State never impeached any defense witness testimony concerning the exhibit's content. The exhibit adds no substantial mitigating evidence to the record.

Baker's appellate counsel did not commit serious error by failing to supplement the record to include the missing exhibit in light of its cumulative nature and relatively minor import. Even if appellate counsel should have supplemented the record, Baker has failed to establish that he was prejudiced by the omission of an exhibit from the record on appeal. For these reasons, we deny Baker relief as to this claim.

---

5. Dr. Krop's direct examination testimony exceeded fifty pages of trial transcript. The State's cross-examination comprised less than seven pages of trial transcript.

## ACT Corporation Evaluation Report

As the second claim in his petition for writ of habeas corpus, Baker argues that his appellate counsel rendered ineffective assistance by failing to supplement the record on appeal with the full April 24, 2002, ACT Corporation Evaluation Report. Again, in order to determine whether Baker is entitled to habeas relief, this Court must determine (1) "whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling outside the range of professionally acceptable performance," and (2) "whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result." Cox v. State, 966 So. 2d 337, 365 (Fla. 2007) (quoting Pope, 496 So. 2d at 800). "The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Anderson v. State, 18 So. 3d 501, 520 (Fla. 2009) (quoting Freeman, 761 So. 2d at 1069). "Appellate counsel is not ineffective for failing to raise issues not preserved for appeal." Medina v. Dugger, 586 So. 2d 317, 318 (Fla. 1991).

Baker argues that an April 24, 2002, history and assessment of Baker prepared by a social worker for the ACT Corporation was discussed during witness testimony but never submitted into evidence. Baker takes exception with the trial court's reference to information contained in the report in its Sentencing Order.

Since Baker did not object to the Sentencing Order on this basis, he is procedurally barred from seeking relief for this trial court error. Schoenwetter v. State, 46 So. 3d 535, 563 (Fla. 2010) ("Claims of ineffective assistance of counsel may not be used to camouflage issues that should have been presented on direct appeal or in a postconviction motion.") (citations omitted).

Baker also fails to establish how he was prejudiced by appellate counsel's failure to supplement the record on appeal with this report. Baker argues that the prognosis that he was at a low to moderate risk of suicide shows proof that Baker suffered from extreme emotional disturbances. This argument is meritless. While the report was made because Baker was allegedly seen tying a sheet around his neck, Baker denied that he ever did so and specifically claimed that the report was false. Moreover, the report indicates that Baker denied any depression, reported that he had a couple of class friends, attended church, denied feeling suicidal, appeared to the evaluator to have normal intelligence and a strong street sense, and liked listening to music. Finally, the relevant portion of the report that the trial court cited in its Sentencing Order that Baker had a "strong street sense" was a part of Dr. Krop's testimony.

This report did little to support Baker's claim of extreme emotional distress and actually contradicted Baker's claim of borderline intelligence. For this reason, appellate counsel cannot be found to have committed serious error by failing to

supplement the record on appeal to include the report.  Further, Baker has failed to demonstrate how he was prejudiced by the omission of this report from the record on appeal.  Consequently, we deny relief as to this claim.

## CONCLUSION

For the reasons stated above, we reverse the trial court's denial of Baker's claim related to the constitutionality of Florida's death penalty scheme, and we deny habeas relief.  Accordingly, we vacate Baker's death sentence as unconstitutional under Hurst and remand to the trial court for a new penalty phase.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
POLSTON, J., concurs in part and dissents in part with an opinion, in which CANADY and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., concurring in part and dissenting in part.

I concur with the majority's decision except its vacating of the death sentence pursuant to Hurst.

CANADY and LAWSON, JJ., concur.

Two Cases:

An Appeal from the Circuit Court in and for Flagler County,
    Joseph David Walsh, Judge - Case No. 182007CF000033XXXXXX
And an Original Proceeding – Habeas Corpus

James V. Viggiano, Jr., Capital Collateral Regional Counsel, Middle Region, and Ann Marie Mirialakis and Ali A. Shakoor, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

for Appellant/Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Vivian Singleton, Assistant Attorney General, Daytona Beach, Florida,

for Appellee/Respondent