# Supreme Court of Florida

_____

No. SC2023-1735

_____

**RAYMOND BRIGHT,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC2024-0876

_____

**RAYMOND BRIGHT,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

February 26, 2026

GROSSHANS, J.

Raymond Bright brutally beat two men to death with a hammer. Based on this conduct, Bright was found guilty of first-degree murder and ultimately sentenced to death. In separate

appeals, we affirmed his convictions and sentences. Bright later filed a motion under Florida Rule of Criminal Procedure 3.851, asking the circuit court to vacate his death sentences. The court denied that motion, which Bright now appeals. In addition to his numerous arguments directed at the circuit court's rulings, Bright urges us to issue a writ of habeas corpus to remedy alleged errors in his guilt and penalty phases. For the following reasons, we affirm the challenged order and deny habeas relief.[1]

I

In February 2008, Michael Majors visited Bright's Jacksonville home. Twenty-year-old Derrick King and sixteen-year-old Randall Brown were also present at the residence. The next day, after attempting to contact Brown, Majors returned to Bright's house. No one responded when Majors knocked, prompting him to enter the home through an open window.

Once inside, Majors proceeded to the living room. There, he discovered the dead bodies of Brown and King. Brown was on a recliner, with his head propped against the wall and partially

1. We have jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const.

covered by a blanket. King was lying face down on the floor, and his head was beside the couch. There was a significant amount of blood under the recliner and on the couch, as well as on the adjacent wall and ceiling. Bright was not present.

After discovering the scene, Majors called 911, and law enforcement officers responded to Bright's home. As part of the investigation that followed, crime scene technicians obtained physical evidence from the area, including a hammer and guns they found hidden in the front yard. Later testing revealed King's DNA on the hammer.

Meanwhile, with the investigation underway, Bright told his friend Benjamin Lundy about the incident at his home, noting that he "screwed up" and killed two people. Bright also spoke with his former wife, who then contacted law enforcement and set up a meeting for Bright to discuss the homicides. Prior to the meeting, officers arrested Bright at his former wife's house.

During his incarceration at the county jail, Bright spoke with another inmate named Mickey Graham. Bright told Graham that a confrontation occurred, which ended with Bright striking both victims with a hammer. According to Bright, he could hear the men

- 3 -

breathing and gurgling, but then the room became silent.

Ultimately, the State charged Bright with two counts of first-degree murder and sought the death penalty for both crimes. At the guilt-phase trial, the State called numerous witnesses, including Majors, the responding officers, and the medical examiners who conducted the autopsies. The medical examiners opined that Brown and King each died from blunt force trauma to the head. King had over fifty-five separate injuries, including thirty-eight to his head and neck. The injuries to his body were consistent with defensive wounds. Brown had at least eight skull fractures and fourteen other independent injuries to his body, some of which were consistent with defensive wounds.

After being presented with this and other evidence, the jury found Bright guilty as charged. Following the penalty-phase trial in which both parties presented additional evidence, the jury recommended the death penalty for both murders by a vote of eight to four. Consistent with those recommendations, the trial court imposed two death sentences.

Bright appealed, challenging both his convictions and death sentences. *Bright v. State*, 90 So. 3d 249, 252 (Fla. 2012). We

affirmed after determining that sufficient evidence supported the convictions and that none of Bright's claims justified reversal. *Id.* at 258-62, 265.

Following our affirmance, Bright sought postconviction relief in circuit court, asserting both guilt- and penalty-phase claims. The circuit court rejected all guilt-phase claims. But as to the penalty-phase claims, the court found counsel ineffective in investigating and presenting mitigating evidence. Both the State and Bright appealed. *State v. Bright* (*Bright II*), 200 So. 3d 710, 715 (Fla. 2016). We affirmed in all respects and remanded for a new penalty phase. *Id.* at 742. At the second penalty phase (governed by the post-*Hurst*,[2] pre-*Poole*[3] sentencing regime), the State sought to prove two aggravators: (1) that Bright had prior violent felony convictions (PVF) and (2) that the murders were especially heinous, atrocious, or cruel (HAC). *See* § 921.141(6)(b), (h), Fla. Stat. (2017).

---

2. *Hurst v. State*, 202 So. 3d 40 (Fla. 2016) (interpreting *Hurst v. Florida*, 577 U.S. 92 (2016), as requiring that a jury unanimously recommend the death penalty).

3. *State v. Poole*, 297 So. 3d 487 (Fla. 2020) (receding from *Hurst*'s interpretation requiring a unanimous jury recommendation of death).

For the PVF aggravator, the State introduced Bright's contemporaneous murder convictions and 1990 robbery conviction. To establish the HAC aggravator, the State called the chief medical examiner, who had reviewed the autopsy records for both victims. Her testimony largely paralleled the evidence outlined above. Of note, she found evidence of a prolonged brutal attack with an object consistent with a hammer.

For mitigation, Bright called family members and friends who spoke of his difficult upbringing and military service. One such witness was Bright's sister, Janice Jones. Bright also presented mental-health mitigation through the expert testimony of Dr. Harry Krop, Dr. Steven Gold, and Dr. Robert Ouaou.

After deliberations, the jury unanimously recommended death for each murder, finding PVF proven as to both murders and HAC proven as to the King murder. In light of that recommendation, the court held a separate *Spencer*[4] hearing. At this hearing, Bright's daughter testified about her relationship with her father and the situation in his home leading up to the murders.

---

4. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

The court found the State proved the PVF aggravator beyond a reasonable doubt. In addition, the court found the State had proved the HAC aggravator as to King's murder. The court gave great weight to these aggravating factors. As for mitigation, the court rejected the extreme-disturbance and substantial-impairment statutory mitigators. *See* § 921.141(7)(b), (f), Fla. Stat. However, the court found six categories of nonstatutory mitigating factors, assigning little or no weight to each.[5] The court concluded that the aggravators "heavily outweigh[ed]" the mitigating circumstances. It therefore imposed a sentence of death for each murder.

Bright appealed his death sentences. *Bright v. State* (*Bright III*), 299 So. 3d 985, 989 (Fla. 2020). We rejected all his claims and affirmed. *Id.* at 997-98, 1012. Bright then unsuccessfully sought review by the U.S. Supreme Court. *Bright v. Florida,* 141 S. Ct. 1697 (2021).

This brings us to Bright's current postconviction motion,

---

5. (1) Bright was the victim of child abuse and neglect (no weight); (2) Bright's military career (little weight); (3) Bright's history of drug and alcohol abuse (little weight); (4) Bright's positive relationships with others (little weight); (5) Bright's good and mannerly behavior during court proceedings (no weight); and (6) Bright's behavior while incarcerated (no weight).

which is at issue in this appeal. In the motion, Bright raised seventeen numbered claims for relief, asking that the circuit court vacate his death sentences. He primarily argued that his penalty-phase counsel provided ineffective assistance in various respects under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Bright later sought to amend his motion to add four more claims. However, the circuit court denied his request to amend. It also denied his request to interview various penalty-phase jurors.

As for the seventeen claims, the circuit court summarily denied four but held an evidentiary hearing on the thirteen remaining claims. At this hearing, Bright called numerous witnesses and introduced certain documentary evidence. The witnesses included Bright's penalty-phase counsel and several veterans who served with him or were his contemporaries. Bright also called several experts.

The circuit court entered an order denying the remaining claims, which Bright now appeals. He also petitions for a writ of habeas corpus. We begin with Bright's appeal.

II

Before addressing Bright's substantive claims, we consider his challenges to certain threshold rulings made by the circuit court.

A

Bright first argues that the circuit court erred in denying his request to amend his postconviction motion to add four additional claims. Applying a deferential abuse-of-discretion standard of review, we disagree. *See Marek v. State*, 8 So. 3d 1123, 1131 (Fla. 2009) (reviewing denial of a motion to amend a postconviction motion for an abuse of discretion).

A postconviction motion "may not be amended unless good cause is shown." Fla. R. Crim. P. 3.851(f)(4).

In Bright's proposed amendment, he sought to add claims based on information that was readily available when he filed his postconviction motion. Nevertheless, Bright contends that good cause existed for the late amendment because of the COVID-19 pandemic, voluminous records in his case, and turnover at the law firm that represented him. We have carefully considered these reasons but conclude that none, in isolation or in the aggregate, constitute good cause for failing to include claims readily accessible

- 9 -

to counsel at the postconviction motion's initial filing. *See Lugo v. State*, 2 So. 3d 1, 19 (Fla. 2008).

Accordingly, the circuit court did not abuse its discretion in denying Bright's motion to amend.

B

As another threshold claim, Bright argues that the circuit court erred in denying his motion to interview jurors from his second penalty phase. We conclude that the court did not abuse its discretion in denying this motion. *See Foster v. State*, 132 So. 3d 40, 65 (Fla. 2013) ("A trial court's decision on a motion to interview jurors is reviewed pursuant to an abuse of discretion standard." (quoting *Anderson v. State*, 18 So. 3d 501, 519 (Fla. 2009))).

A motion to interview jurors must "be filed within 10 days after the rendition of the verdict, unless good cause is shown for the failure to make the motion within that time." Fla. R. Crim. P. 3.575. Thus, a defendant whose motion is untimely bears the burden of showing good cause for the delay. *Bates v. State*, 398 So. 3d 406, 407 (Fla. 2024).

Bright does not dispute that his motion was untimely. Rather, he asserts that his penalty-phase counsel would not have

- 10 -

interviewed the jurors due to an alleged personal conflict, forcing him to wait to seek juror interviews. Even assuming this is true, Bright fails to explain why his motion to interview jurors was filed over a year after his current counsel took over representation.

Therefore, Bright has not shown good cause, and we affirm the circuit court's ruling.[6]

C

We now focus on Bright's substantive claims, beginning with numerous assertions that his penalty-phase counsel was ineffective.

"[C]laims of ineffective assistance of counsel are reviewed under the two-prong test established by *Strickland*." *Salazar v. State*, 188 So. 3d 799, 814 (Fla. 2016). To succeed on a *Strickland* claim, a defendant must prove that (1) counsel's performance was deficient—i.e., that it fell below an objective standard of reasonableness—and (2) such deficiency was prejudicial. 466 U.S.

---

6. Bright also contends that the circuit court erred in sustaining the State's objection to his proffer of trial counsel's files, resulting in an incomplete appellate record. This argument is frivolous. As noted by the State, the record contains the documents that Bright proffered.

at 687. The prejudice prong requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If the defendant fails to establish one prong, a court need not address the other. *Id.* at 697.

When reviewing ineffective assistance claims following an evidentiary hearing, "this Court defers to the factual findings of the trial court to the extent that they are supported by competent, substantial evidence, but reviews de novo the application of the law to those facts." *Smith v. State*, 330 So. 3d 867, 875 (Fla. 2021) (quoting *Johnson v. State*, 135 So. 3d 1002, 1013 (Fla. 2014)).

1

Bright argues that he received ineffective assistance stemming from penalty-phase counsel's failure to use a victim-blaming strategy. In various iterations, he asserts that counsel was ineffective for failing to introduce evidence that the victims were drug dealers, rebut the State's description of the victims as innocent, argue that Bright feared the victims, and blame the victims in opening and closing statements. However, based on the testimony at the evidentiary hearing, we agree with the lower court

that counsel made a reasonable strategic decision not to victim blame.

We have repeatedly stressed that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the defendant therefore "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Hayward v. State*, 183 So. 3d 286, 297 (Fla. 2015) (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 689). And consistent with these principles, we have held that "[s]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Smith*, 330 So. 3d at 878 (quoting *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000)).

Here, counsel testified that she considered, and ultimately rejected, the victim-blaming approach. Based on her years of experience, she concluded that this strategy would be unwise because it might hurt her rapport with the jury and have negative consequences for Bright. Instead, she decided to emphasize mercy-

related mitigation.

In our view, as found by the circuit court, this testimony supports the legal conclusion that counsel had a strategic reason for not impugning the reputation of the victims. And we think her strategy was eminently reasonable under the facts and circumstances of this case—a holding that accords with our prior cases. *See Spencer v. State*, 842 So. 2d 52, 61-62 (Fla. 2003) (holding that counsel did not perform deficiently by declining to present evidence of the antagonistic relationship between the defendant and the victim to avoid "being perceived as blaming the victim"). Thus, Bright cannot show deficient performance in counsel's decision to refrain from victim blaming, both in argument and witness examination.

Bright also fails to establish prejudice. The proposed evidence—that the victims were drug dealers who threatened Bright—would not have undermined the aggravating evidence[7] or

---

7. We specifically note and reject Bright's contention that victim blaming would have rebutted the HAC aggravator. The HAC aggravator focuses on the "means and manner" in which the defendant inflicted the death—not the defendant's "intent and motivation." *Barnhill v. State*, 834 So. 2d 836, 850 (Fla. 2002); *see also Cruz v. State*, 320 So. 3d 695, 728 (Fla. 2021). Bright's

furnished significant mitigating evidence. And victim blaming would have invited the State to point out the many alternatives available to Bright in resolving any conflict between him and the victims other than bludgeoning them to death. *See Douglas v. State*, 141 So. 3d 107, 123-24, 126 (Fla. 2012) (finding the defendant failed to establish prejudice where the proposed evidence would have opened the door to other damaging testimony).

In sum, we reject each of Bright's victim-denigration claims, finding the record amply supports the circuit court's conclusions.

2

Bright next argues that counsel was ineffective for failing to investigate and present mitigation witnesses to testify regarding his mental health, military service, and background. For the reasons explained below, we affirm the circuit court's denial of these claims.

a

As to his mental-health mitigation, Bright contends that

---

proposed evidence does not rebut the HAC aggravator, as it does not bear on the means and manner by which he killed the victims. As a result, there is no reasonable probability that Bright would have received a lesser sentence had counsel blamed the victims in this manner.

counsel was ineffective for failing to prepare Dr. Krop as a witness and to provide him with necessary background materials for a PTSD assessment.[8] Bright argues that Dr. Krop contradicted other experts when he stated he had not tested Bright for PTSD and he lacked sufficient information to suggest that Bright was under extreme mental or emotional disturbance. However, competent, substantial evidence supports the circuit court's finding that Dr. Krop did not contradict those experts.

At the penalty-phase trial, Dr. Krop testified about his 2008 and 2009 testing of Bright and noted he had not tested Bright for PTSD despite observing symptoms of the disorder. Bright fails to explain how this contradicted the testimony of two other experts, Dr. Gold and Dr. Ouaou, who opined that Bright had PTSD. Dr. Krop never testified that Bright did not have PTSD. Moreover, counsel introduced Dr. Krop's testimony primarily to establish that Bright did not have antisocial personality disorder. Testing for PTSD was outside the scope of Dr. Krop's review. Accordingly,

---

8. Bright also asserts in a single sentence that counsel was ineffective for failing to call Dr. Miller. Because this claim is improperly briefed, we do not consider it. *See Trappman v. State*, 384 So. 3d 742, 751 n.4 (Fla. 2024).

- 16 -

Bright fails to show how counsel was deficient in her preparation of Dr. Krop.

b

Second, Bright alleges that counsel was ineffective for failing to present testimony from multiple individuals who served with him in the military. At the postconviction evidentiary hearing, Bright introduced testimony from these veterans. Collectively, they indicated that Bright "was an extremely valuable asset," and they commented on his assumption of a high degree of responsibility as he worked on the flight deck—"the most dangerous place in the whole world to work." According to Bright, penalty-phase counsel could have used this testimony to show that Bright was a responsible and hardworking Marine Sergeant. But this claim fails as well.

As an initial matter, we find that counsel's performance was not deficient. At the penalty-phase trial, counsel called military expert James Hernandez to present evidence of Bright's military service. Among other things, Hernandez underscored Bright's military contributions, which were reflected in the awards and meritorious distinctions he earned. We acknowledge that the

postconviction witnesses included additional details not encompassed in Hernandez's testimony, but this does not render counsel's performance deficient. *See Valentine v. State*, 98 So. 3d 44, 53 (Fla. 2012) ("[T]he presentation of more favorable testimony in postconviction proceedings does not render counsel's investigation into mitigation deficient.").

Moreover, counsel's decision to use Hernandez's testimony alone was a reasonable strategic one. Counsel chose not to call other witnesses, such as those who testified at the evidentiary hearing, to avoid the possibility that the jury might hear about negative incidents during Bright's military service. *See Dufour v. State*, 905 So. 2d 42, 57 (Fla. 2005) ("[C]ounsel is not deficient where he makes a reasonable strategic decision to not present [certain] mitigation testimony during the penalty phase because it could open the door to other damaging testimony." (quoting *Griffin v. State*, 866 So. 2d 1, 9 (Fla. 2003))).

Nor can Bright show prejudice. The court gave Bright's military service little weight as a nonstatutory mitigator. We do not think that presenting additional, largely cumulative evidence would have altered the balance of aggravating and mitigating

circumstances. *See Hilton v. State*, 326 So. 3d 640, 649 (Fla. 2021) ("Where the additional mitigation is minor or cumulative and the aggravating circumstances substantial, . . . confidence in the outcome of the penalty phase is not undermined.").

c

Finally, Bright argues that counsel failed to make reasonable efforts to investigate and present mitigation regarding his background. At the evidentiary hearing, Bright presented family members and other lay witnesses to testify about his childhood, their positive relationships with him, his work ethic, and his other positive qualities.

However, Bright has failed to establish deficient performance because counsel made every reasonable effort to contact these witnesses. They could not be located, or they simply were unwilling, and therefore unavailable, to testify at his penalty phase. *See White v. State*, 964 So. 2d 1278, 1286 (Fla. 2007) ("A defendant cannot establish ineffective assistance of counsel based on counsel's failure to call a witness who is unavailable." (citing *Melton v. State*, 949 So. 2d 994, 1004 (Fla. 2006))); *see also Evans v. State*, 995 So. 2d 933, 943 (Fla. 2008) (finding that counsel was not

- 19 -

ineffective for failing to call an unavailable witness at trial where reasonable efforts were made to find the witness).

The record in this case reflects significant effort by counsel to locate the proposed witnesses. Counsel testified at the evidentiary hearing that she and her investigator tried on numerous occasions to contact Bright's family. Although Bright presented evidence at the hearing that was in tension with counsel's testimony, the circuit court found counsel more credible. Based on counsel's credited testimony, we affirm the court's finding that counsel was not deficient for failing to present these witnesses.

For the reasons outlined above, we deny this claim in its entirety.

3

Bright also claims that counsel was deficient for failing to impeach Majors and object to the introduction of Majors's 911 call on relevancy grounds. This claim lacks merit.

As to impeaching Majors, counsel explained she wanted to use his testimony to suggest that the victims were awake on the night of the murders. On cross-examination, she elicited what she needed from Majors and did not want to discredit the favorable portions of

his testimony by impeaching him with his criminal history. This was a reasonable strategic decision and thus does not constitute deficient performance. *See Occhicone*, 768 So. 2d at 1048.

With regard to the 911 call, we agree with the circuit court that it was indeed relevant. *See Bearden v. State*, 161 So. 3d 1257, 1266 (Fla. 2015) ("Corroborative evidence is admissible 'to strengthen a witness' testimony by evidence of matters showing its consistency and reasonableness and tending to indicate that the facts probably were as stated by the witness.' " (quoting *Chaachou v. Chaachou*, 73 So. 2d 830, 837 (Fla. 1954))). Therefore, counsel's failure to object on relevancy grounds was not deficient. *See Rigterink v. State*, 193 So. 3d 846, 873 (Fla. 2016) (holding that counsel was not deficient for failing to object to the introduction of relevant evidence). Although counsel could have offered a nonfrivolous objection that the probative value was outweighed by the danger of unfair prejudice, such an objection is not one that all reasonable attorneys would make, especially given the limited scope of the 911 call and everything else the jury heard and saw regarding the horrific crime scene.

Accordingly, we deny relief on this claim.

Bright contends that counsel was ineffective for failing to object to three remarks in the State's closing argument regarding Bright's abusive childhood and his military service. The circuit court properly denied this claim.

Bright first takes issue with his counsel's failure to object to the State's assertion that sympathy for his childhood related only to mitigation and could not provide a basis for the jury's recommendation of life or death. However, on direct appeal, we held this comment was not improper. *Bright III*, 299 So. 3d at 999 ("[T]he prosecutor did not instruct the jurors to disregard evidence of Bright's abuse in reaching their decisions, but rather, explained that the evidence of abuse is properly considered as mitigation, and that their decisions may not be based upon sympathy." (citing *Zack v. State*, 753 So. 2d 9, 24 (Fla. 2000))); *see also Saffle v. Parks*, 494 U.S. 484, 490 (1990) (explaining mitigation is the evidence the jury considers in making its sentencing recommendation whereas sympathy is a lens through which the jury examines the evidence).[9]

_____

9. To the extent Bright is arguing that we were wrong in our assessment of that remark on direct appeal, his argument is

In short, we see no basis to hold counsel deficient for failing to object to a comment we found proper. Indeed, we have repeatedly held that counsel cannot be deficient for failing to make a meritless objection. *See Cannon v. State,* 310 So. 3d 1259, 1265 (Fla. 2020); *Matthews v. State,* 288 So. 3d 1050, 1065 (Fla. 2019).

Bright also faults counsel for not objecting to two other prosecutorial statements, namely, that he (1) did not get PTSD from the military and (2) arrived at work intoxicated. Contrary to Bright's argument, counsel made reasonable strategic decisions not to object to the statements.

Instead of objecting, counsel responded to the comments in a way that she believed would engender sympathy from the jury. This strategy was reasonable, as it comported with counsel's overarching theory of mitigation. Moreover, according to counsel's credited testimony, she determined that this approach avoided the implication that Bright had something to hide. Thus, counsel was not deficient for declining to object to the State's comments. *See Brown v. State,* 846 So. 2d 1114, 1122 (Fla. 2003) ("Counsel's

procedurally barred and not subject to reconsideration. *See Deparvine v. State,* 146 So. 3d 1071, 1106 (Fla. 2014).

strategic decisions will not be second-guessed on collateral attack."
(quoting *Johnson v. State,* 769 So. 2d 990, 1001 (Fla. 2000))).

Bright has not shown error in the circuit court's denial of this claim, and we affirm.

5

Bright also asserts that counsel was ineffective for failing to request a continuance of the penalty-phase trial due to Hurricane Irma. We disagree.

At trial, defense counsel, the prosecutor, and the court discussed how best to proceed in light of the impending hurricane. At the postconviction evidentiary hearing, counsel testified to her concerns about rescheduling the trial, including the risk of having to select a new jury after securing a jury about which she felt optimistic. She therefore made a strategic decision to move forward. We see nothing unreasonable about that decision.

Moreover, Bright has not demonstrated prejudice. Bright alleges only that the trial's chaotic conditions were prejudicial. This vague and conclusory allegation is insufficient to show a reasonable probability that he would have received a life sentence had the trial been rescheduled. *See Jones v. State,* 998 So. 2d 573, 584 (Fla.

2008) (holding that a conclusory allegation of prejudice is insufficient).

Finding neither deficient performance nor prejudice, we affirm the circuit court's rejection of this claim.

6

Bright also claims that counsel was ineffective during voir dire for failing to ask adequate life-qualifying questions.[10]  The circuit court summarily denied this claim, finding the record sufficient to refute it.  We agree with that ruling.

"To be entitled to an evidentiary hearing on a claim of ineffective assistance, the defendant must allege specific facts that are not conclusively rebutted by the record . . . ."  *Anderson v. State*, 220 So. 3d 1133, 1142 (Fla. 2017) (quoting *Rhodes v. State*, 986 So. 2d 501, 513-14 (Fla. 2008)).

Here, the record conclusively refutes Bright's claim.  In reaching that conclusion, we have carefully reviewed the relevant portions of the trial transcript, which show that counsel gave legally

---

10. Life-qualifying questions examine whether a prospective juror will automatically recommend the death penalty after a defendant's conviction regardless of the evidence presented.  *See Morgan v. Illinois*, 504 U.S. 719, 734-35 (1992).

accurate statements on the law (including the significance of aggravation and mitigation) and asked appropriate life-qualifying questions. The judge also explained certain death-penalty concepts to the jury. Accordingly, we affirm the circuit court's summary denial of this claim.

7

For his final ineffectiveness claim, Bright argues that counsel should have objected to the verdict form because it failed to explain that a penalty-phase juror "may not refuse to consider or be precluded from considering any relevant mitigating evidence." *Mills v. Maryland*, 486 U.S. 367, 374-75 (1988) (emphasis omitted) (internal quotation marks omitted) (quoting *Skipper v. South Carolina*, 476 U.S. 1, 4 (1986)). This argument lacks merit.

As interpreted by the U.S. Supreme Court, the Constitution forbids imposition of the death penalty if the jury is precluded from considering any relevant mitigating evidence. *Smith v. Spisak*, 558 U.S. 139, 144 (2010). Applying that principle, the Court held that jury instructions and verdict forms together may not indicate that a mitigating circumstance must be found unanimously by the jury. *Id.* (citing *Mills*, 486 U.S. at 380-81).

The verdict form here did not indicate a unanimity requirement. Instead, Bright merely takes issue with the form on the ground that it did not expressly inform jurors that they could consider a mitigator even if other jurors did not find that the mitigator was established. However, the jury was properly instructed that mitigation need not be determined on a unanimous basis. And the six completed mitigation verdict forms show that the jurors followed the instructions in that five of the verdicts contained nonunanimous votes. As such, the record conclusively refutes the claim that counsel's performance was deficient. *See Darling v. State*, 966 So. 2d 366, 384 (Fla. 2007) (explaining that counsel cannot be ineffective for failing to raise a meritless objection).

We thus affirm the summary denial of this claim.

## D

We now turn to Bright's actual-conflict-of-interest claim, in which he argues that counsel's impending move influenced her decision to not request a continuance in light of Hurricane Irma. This conflict, Bright contends, excuses him from demonstrating prejudice under *Strickland*. Even assuming this is the type of

- 27 -

actual conflict that could entitle Bright to relief,[11] the facts developed at the evidentiary hearing do not establish that a conflict existed.

Generally, a defendant alleging an ineffective assistance claim must demonstrate prejudice. *Mickens v. Taylor*, 535 U.S. 162, 166-67 (2002). But the U.S. Supreme Court has recognized that courts may presume prejudice when the defendant's attorney labors under a conflict of interest. *Id.* at 166-68, 171-72. We have summarized that a defendant must establish the following two elements before prejudice is presumed: (1) counsel had an actual conflict of interest, and (2) the conflict adversely affected counsel's representation of the defendant. *See State v. Larzelere*, 979 So. 2d 195, 208 (Fla. 2008); *Sliney v. State*, 944 So. 2d 270, 279 (Fla. 2006).

---

11. We have applied actual-conflict principles when a defendant alleges a conflict based on the defense attorney's personal interests. *See State v. Larzelere*, 979 So. 2d 195, 208-10 (Fla. 2008); *State v. Coney*, 845 So. 2d 120, 133-34 (Fla. 2003). However, the U.S. Supreme Court has only ever applied these principles in the context of multiple representation. *See Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980); *Mickens v. Taylor*, 535 U.S. 162, 166-67 (2002). Indeed, the Court has warned against "expansive application" of these principles to other kinds of conflict—the kind our precedents have entertained. *See Mickens*, 535 U.S. at 174-75.

- 28 -

An actual conflict of interest exists when counsel "actively represents conflicting interests." *Larzelere*, 979 So. 2d at 208 (quoting *Sliney*, 944 So. 2d at 279). "To demonstrate an actual conflict, the defendant must identify specific evidence in the record that suggests that [counsel's] interests were compromised. A possible, speculative or merely hypothetical conflict is insufficient to impugn a criminal conviction." *Id.* (internal quotation marks omitted) (quoting *Sliney*, 944 So. 2d at 279).

At the postconviction evidentiary hearing, counsel repeatedly denied that her impending move impacted her decision not to request a continuance. Rather, she and Bright felt that a favorable jury had been selected, and they did not want to risk selecting another. The lower court credited this testimony. No other evidence supports Bright's claim that counsel's personal interest in moving compromised her efforts to represent him. As such, we deny relief on this claim.

E

Lastly, Bright contends that the circuit court erred in failing to find he was deprived of a fair trial due to cumulative error. We disagree. We have assessed all of Bright's ineffective assistance

claims and find no deficient performance. Accordingly, this claim cannot succeed. *State v. Woodel*, 145 So. 3d 782, 803 (Fla. 2014) ("[B]ecause we do not find multiple errors in this case, there is no cumulative error effect that establishes prejudice.").

### III

Bright has also filed a habeas petition in which he raises ten individual claims. We deny them all.

### A

Bright presents multiple claims regarding appellate counsel's representation in his 2020 appeal. "In general, claims of ineffective assistance of appellate counsel are properly presented in a petition for writ of habeas corpus . . . ." *Brown v. State*, 304 So. 3d 243, 278 (Fla. 2020) (citing *Baker v. State*, 214 So. 3d 530, 536 (Fla. 2017)). "The standard for a claim of ineffective assistance of appellate counsel mirrors the *Strickland* standard for ineffective assistance of trial counsel: the petitioner must demonstrate deficient performance and resulting prejudice." *Hilton*, 326 So. 3d at 652 (citing *Frances v. State*, 143 So. 3d 340, 358 (Fla. 2014)).

Regarding the deficiency prong, Bright must show that appellate counsel's failure to raise certain issues "constitute[s] a

serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance." *Pope v. Wainwright*, 496 So. 2d 798, 800 (Fla. 1986). As for prejudice, he must prove that any deficiency "compromised the appellate process to such a degree as to undermine confidence in the correctness of the result." *Id.* In other words, "the deficiency must concern an issue which is error affecting the outcome, not simply harmless error." *Freeman v. State*, 761 So. 2d 1055, 1069 (Fla. 2000) (quoting *Knight v. State*, 394 So. 2d 997, 1001 (Fla. 1981)).

1

Bright first argues that appellate counsel was ineffective for failing to raise a claim related to prosecutorial misconduct. He contends the State improperly suggested that the jury should not consider a life sentence because Bright did not give that same choice to the victims. In closing, the State argued:

> Isn't it ironic that in terms of – you have a choice. By his actions, he now is in the criminal justice system, and as a result, you have a choice as to whether he should get death or whether he should get life. Well, Raymond Bright never gave each of these victims a choice, did he?

We assume that the challenged comment was preserved by a

sufficiently specific objection from penalty-phase counsel. Even so, appellate counsel's failure to raise the same-mercy argument on direct appeal does not support a finding of prejudice.

Our precedent characterizes "same mercy" arguments as "impermissible." *See Wolf v. State*, 416 So. 3d 1117, 1132 (Fla. 2025), *cert. denied*, 2026 WL 135610 (U.S. Jan. 20, 2026). But "a mercy argument standing alone does not constitute reversible error." *Merck v. State*, 975 So. 2d 1054, 1062 (Fla. 2007). This is so especially when "the mercy comments [are] not dwelled upon or emphasized in the context of the entire closing." *Id.*

Here, considering the entire closing, the State did not dwell upon or emphasize the mercy comments. Namely, the State did not implore the jury to recommend death as a result of Bright's failure to show mercy. Considering these facts along with the strength of the evidence against Bright and the gravity of the aggravators, we find that any error would have been harmless. As such, Bright cannot show that appellate counsel's failure to raise this claim prejudiced him.

## 2

Bright's assertion of ineffectiveness in appellate counsel's

failure to argue the lack of life-qualifying questions is also meritless. As discussed above, the record demonstrates that Bright's counsel adequately life-qualified the jury based on the facts and circumstances of this case. Appellate counsel cannot be deemed deficient for declining to raise nonmeritorious issues. *See Zack v. State*, 911 So. 2d 1190, 1211 (Fla. 2005).

3

Bright's argument that appellate counsel should have raised a Sixth Amendment challenge based on penalty-phase counsel's asserted actual conflict of interest fails too. For the reasons given above, we see no basis for finding an actual conflict. Again, appellate counsel cannot be faulted for failing to brief a meritless argument unsupported by the record and case law. *See id.*

4

Bright also contends that appellate counsel's cumulative error in his 2020 appeal entitles him to a new penalty phase. We reject this argument, as his claims are meritless. *See Porter v. Crosby*, 840 So. 2d 981, 986 (Fla. 2003) (concluding that habeas corpus petitioner's cumulative error claim was properly denied where individual claims were meritless and procedurally barred).

B

Next, Bright asserts a due process violation because portions of the appellate record were redacted in his direct appeal. This claim fails for two reasons.

First, it is procedurally barred. *See Covington v. State*, 348 So. 3d 456, 481 (Fla. 2022) (claims that could have been previously raised are barred in a habeas petition). Bright could have raised his objection to an incomplete record on direct appeal but failed to do so.

Second, Bright has not suggested that any portion of the redacted record would have supported a viable appellate argument or was necessary to bolster a claim that was raised in his briefing. For these reasons, Bright's due process claim fails.

C

Bright alleges multiple errors relating to his appellate counsel's representation in the direct appeal that followed his 2009 guilt phase. He advances three claims of ineffective assistance of appellate counsel[12] and one claim of cumulative error. At the

_____

12. He argues that appellate counsel was ineffective for failing to raise claims based on (1) a discovery violation, (2) the trial judge's

- 34 -

outset we note "[h]abeas corpus should not be used as a vehicle for presenting issues which should have been raised at trial and on appeal or in postconviction proceedings." *Smith v. State*, 126 So. 3d 1038, 1053 (Fla. 2013) (quoting *Wright v. State*, 857 So. 2d 861, 874 (Fla. 2003)).

We previously reviewed Bright's initial postconviction motion. *See Bright II*, 200 So. 3d at 729-42 (affirming the postconviction court's order and remanding for a new penalty phase). Bright could have and should have raised these arguments at that time. Because he did not, these claims are procedurally barred. Accordingly, we deny relief.[13]

### D

As his final habeas claim, Bright asserts that Florida's postconviction process is inherently biased because it allows the same judge who presided over a defendant's trial to adjudicate the defendant's postconviction claims. According to Bright, the judge

---

sidebar comment, and (3) the improper dismissal of two jurors under *Batson v. Kentucky*, 476 U.S. 79 (1986).

13. Even if we considered these guilt-phase claims on the merits, we would conclude that they do not support relief.

will be predisposed in postconviction towards presuming the correctness of his or her previous actions and rulings. Bright contends that because of this bias, he suffered a manifest injustice during his postconviction proceedings, which amounted to a violation of due process.

A defendant must file a motion to disqualify when he "believes he cannot obtain a fair and impartial trial before the assigned trial judge." *Livingston v. State*, 441 So. 2d 1083, 1086 (Fla. 1983). Bright did not file a motion for judicial disqualification or otherwise present this argument below, so his current claim of inherent bias is procedurally barred. *See Morris v. State*, 931 So. 2d 821, 837 n.14 (Fla. 2006) (rejecting a habeas claim as procedurally barred when trial counsel did not object in the lower court).

Even if not barred, the argument is meritless. The Supreme Court's due process inquiry in this context asks if "as an objective matter, 'the average judge in his position is "likely" to be neutral, or whether there is an unconstitutional "potential for bias." ' " *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009)). There is no objectively reasonable basis to think a judge presiding over a

- 36 -

postconviction motion cannot consider claims regarding a prior trial over which he or she presided.  Neutral judges are entrusted with reviewing their prior decisions at multiple points in both civil and criminal litigation, and Bright presents no reason to doubt this practice.

We therefore deny relief on this claim.

IV

For the foregoing reasons, we affirm the circuit court's denial of Bright's postconviction motion, and we deny his petition for writ of habeas corpus.

It is so ordered.

MUÑIZ, C.J., and LABARGA, COURIEL, FRANCIS, SASSO, and TANENBAUM, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Duval County,
    Russell L. Healey, Judge – Case No. 162008CF002887AXXXMA
And an Original Proceeding – Habeas Corpus

Dawn Macready, Capital Collateral Regional Counsel, Elizabeth Spiaggi, Assistant Capital Collateral Regional Counsel, and Nida Imtiaz, Assistant Capital Collateral Regional Counsel, Northern Region, Tallahassee, Florida,

    for Appellant/Petitioner

James Uthmeier, Attorney General, and Jason W. Rodriguez, Senior Assistant Attorney General, Tallahassee, Florida,

for Appellee/Respondent